MAYER (DEPOSIT SAVINGS ASS'N v.). See Case No. 3.813.

## Case No. 9,341.

### MAYER v. FOULKROD et al.

[4 Wash. C. C. 349.] [1]

Circuit Court. E. D. Pennsylvania. April Term, 1823.

ADMINISTRATOR—EQUITY — REMEDY AT LAW—ADEQUATE AND COMPLETE —JUDICIARY ACT—PRACTICE IN EQUITY—TITLES TO LAND.

1. An executor or administrator is not an assignee. within the meaning of the eleventh section of the judiciary act of 1789 [1 Stat. 78].

2. It is not sufficient to oust the jurisdiction of the equity side of the court, that the plaintiff has a remedy on the common law side: unless it appear that such remedy be adequate and complete to the object of the suit.

[Cited in Baker v. Biddle, Case No. 764.]

3. Although a legatee has a remedy at common law, by the law of Pennsylvania; this does not oust the equity jurisdiction of the circuit courts of the United States; to effect that. the common law side of those courts must be able to afford full. complete, and adequate remedy.

[Cited in Domestic & Foreign Missionary Soc. v. Gaither, 62 Fed. 423.]

4. The thirty-fourth section of the judiciary act applies only to the rights of persons and of

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

property, and in those cases the state laws furnish rules of decision, which the federal courts must observe. But as to remedies and modes of proceeding at common law, they are fixed by the act of the 8th of May, 1792. c. 137 [2 Bior. & D. Laws. 299; 1 Stat. 275. c. 36] to be such as were then used in those courts. in conformity with the act of the 20th of September 1789 [1 Stat. 93].

[Cited in U. S. v. Wonson. Case No. 16,750.]

5. But the equity practice and mode of proceeding was fixed by the act of 1792. subject only to be changed by rules of those courts. or of the supreme court. and cannot be affected by state laws, either prior or subsequent to the act of 1792.

6. If a state law shall declare that to be a legal title. which without such a declaration would be considered only an equivalent one, the federal courts may afford a common law remedy to enforce it. but without excluding the equitable jurisdiction of the court in a case proper for it.

Bill on the equity side of the court, setting forth that John A. Holt, by his last will, devised to his wife all his real estate during her life, and after her death, he directs that the said real estate shall be let out for a yearly rent, to be paid to his daughter during her life, and after her decease, that the said estate should be sold at public auction by his executors, and that the proceeds thereof should be divided amongst his grandchildren, share and share alike, except that his grandson Michael Cooper should have two shares. That after the death of the widow and daughter, George Foulkrod, the surviving executor, sold a certain tract of land, part of the testator's estate, for the sum of $12.000. That the said Lewis Benner, a citizen of the state of Maryland, previous to the death of the widow of the testator, purchased from four of the grandsons, (of whom M. Cooper was one) five eighths of the real estate of the testator, or the proceeds thereof, which was duly assigned. transferred, and set over to him; that the plaintiff, who is the administrator of the said Benner. is a citizen of the said state of Maryland, and the defendants are citizens of this state. The prayer of the bill is. that the defendants [Jacob Foulkrod and others]. who are administrators of George Foulkrod, the surviving executor of Holt. may discover which real estates of Holt had been sold, and to what amount, and may pay to the plaintiff five eighth parts of the proceeds of such sales. The bill does not state that the legatees from whom Benner bought were citizens of a state other than Pennsylvania. To this bill the defendants demurred for want of equity, and that all the matters stated in the bill are properly triable at law. where full, adequate, and complete remedy may be had.

Mr. Rawle, in support of the demurrer, contended:

1. That, upon general principles, a court of law can afford a remedy for the recovery of a pecuniary legacy, and consequently a court of equity cannot entertain jurisdiction in such cases by the express prohibition contained in the sixteenth section of the judiciary law.

2. That admitting the law to be otherwise, still the plaintiff has a full, adequate, and complete remedy at law, under the provisions of an act of assembly of this state, passed in the year 1772. See 1 Smith's Laws, 383. This act declares that it shall be lawful for a person to whom any bequest of money or other goods and chattels shall be made by will, to prosecute an action upon the case, debt, detinue, or account render, as the case may require, for such legacy, after it becomes due, in any of the county courts for holding pleas in any county of the province; and if it shall appear that the legacy is due, and that there are assets sufficient in the hands of the executor, &c. to discharge the debts of the testator, and the legacy so bequeathed, the plaintiff shall recover, &c. The law then provides for abatement in cases where there are not assets sufficient to pay all the legacies; and in case the defendant should plead a want of assets. the court is directed to appoint auditors to examine the accounts of the executors, and to report thereon. and also the proportion of the assets remaining, after payment of the debts, to which the plaintiff is entitled, for which judgment is to be rendered. But to enable the plaintiff to maintain such action. he must have first made a reasonable demand of the executor, accompanied by an offer of two sufficient sureties to be bound to the executor, in double the sum claimed, to refund in case a deficiency of assets to pay debts and other legacies should afterwards appear. which refunding bond. if the executor refuse to receive, the plaintiff is to file with the clerk of the court. It was contended that not only is the plaintiff's remedy under this law complete and adequate, but it guards the executor against future responsibility. by requiring a refunding bond to be given by the plaintiff, and that the plaintiff ought therefore to have pursued his remedy under this law. The courts of the United States take notice of the laws of the states. and shape the remedies in those courts accordingly; as was done in the case of Sims v. Irvine [3 Dall. (3 U. S.) 425]. and is the daily practice in this court where suits are entertained in the name of the assignee of a bond, on the ground that bonds are made assignable by the laws of this state.

It was denied that the ground of jurisdiction is rendered stronger by the circumstance that the suit is brought by the administrator of an assignee of a chose in action, as courts of law entertain suits by such assignees, in the name of the assignor, and take notice of, and guard the interest of such assignees with the same care they would do could the suit be maintained in his own name.

3. That this court is precluded from taking cognizance of this cause by the eleventh section of the judiciary act; the legatees, by whom the assignment was made. being citizens of this state, or not stated to be citizens of a state other than this, are consequently disqualified to sue in this court. Sere v. Pitot. 6 Cranch [10 U. S.] 332; Chappedelaine v. Dechenaux, 4 Cranch [8 U. S.] 306.

4. Another objection was made to the form of the bill, in not stating that the defendant had refused, or neglected to settle his accounts, or, if rendered, that they were untruly or fraudulently settled.

In answer to the first and second objections, the plaintiff's counsel relied upon 2 Fonbl. 321; Deeks v. Strutt, 5 Term R. 690; Robinson v. Campbell, 3 Wheat. [16 U. S.] 321; U. S. v. Howland, 4 Wheat. [17 U. S.] 108; Campbell v. Claudius, 1 Pet. [26 U. S.] 494; U. S. v. Wonson [Case No. 16,750]; 1 Call, 391; Telfair v. Stead, 2 Cranch [6 U. S.] 409.

To the third objection it was answered that the administrator is not an assignee within the meaning of the eleventh section of the judiciary law, and that upon this point the cases of Sere v. Pitot, and Chappedelaine v Dechenaux, are conclusive.

Condy & Dundass, for plaintiff.

Before WASHINGTON, Circuit Justice, and PETERS, District Judge.

WASHINGTON, Circuit Justice. The objections to the jurisdiction are: (1) To the general jurisdiction of the circuit courts of the United States in cases like the present, on the ground that the plaintiff, claiming as assignee of the legacies in dispute, the jurisdiction of the courts of the United States is excluded by the eleventh section of the judiciary law, unless it appear upon the face of the proceedings that the court could have taken cognizance of the cause in case no assignment had been made, and the assignor had brought the suit. (2) To the jurisdiction of the equity side of this court, upon the ground that the plaintiff has an adequate and complete remedy at law in respect to the matter in dispute.

1. The objection to the general jurisdiction of the court was considered so clearly untenable by the supreme court in Chappedelaine v. Dechenaux, 4 Cranch [8 U. S.] 306, that the counsel, when proceeding to discuss it, were stopped by the court. This decision came afterwards under the notice of the court in Sere v. Pitot, 6 Cranch [10 U. S.] 332, and was then more deliberately considered. The opinion there given was, that the eleventh section of the judiciary law, which was relied upon, does not apply to the case of an executor or administrator who is an alien, or citizen of another state than that in which the suit is brought, because "they are not usually designated by the term assignees, and are therefore not within the words of the act." These cases so entirely refute the objection under consideration, that a further examination of it is rendered altogether unnecessary.

2. The grounds of the objection to the jurisdiction of the equity side of the court are: (1) That, upon general principles, a court of law can afford to a legatee a remedy is for the recovery of his legacy; but if not, still,

under the act of assembly of this state, which was referred to, a legislative remedy is expressly provided, full, adequate, and complete.

1. In support of the first ground upon which this objection is rested, the learned counsel cited no case upon which he ventured to reply. Could it even be made to appear that courts of law have afforded a remedy in cases of this kind, it would not follow that the jurisdiction of the equity side of this court is excluded, either by the general principles which regulate the jurisdiction of a court of chancery, or by the positive provision contained in the sixteenth section of the judiciary law, which does no more than affirm the general principle. It is not sufficient to show that the plaintiff in equity has a remedy at law, in order to turn him out of that court, unless the defendant can go further, and prove that that remedy is complete, and fully adequate to the object of the suit. Upon what other ground is it that the jurisdiction of the chancery court stands undisputed by all other courts, in cases of account, dower, partition, rents and profits, lost deeds, and a variety of others, in which the courts of law afford a remedy, but that the remedy falls short of that which a court of equity can grant? Amongst the numerous cases which might be cited in affirmance of the jurisdiction of courts of equity over the particular subject of this suit, it may be sufficient to refer to that of Atkins v. Hill, Cowp. 284, for the purpose of seeing the opinion of Lord Mansfield, who, it is well known, was disposed to go to the very verge of the common law jurisdiction, if not beyond the mark which separated it from the ancient and well established jurisdiction of the courts of equity. He observes that "the discovery and account given in a court of equity is so preferable a remedy, that it has drawn all such suitors (legatees) thither; and therefore, in fact, there is scarce an instance of a legatee attempting to sue at law." "The relief given by a court of equity, is easier and better." See, also, 2 Madd. 2; 2 Fonbl. 321; Herbert v. Wren, 7 Cranch [11 U. S.] 370. 376.

But it is not true that courts of law do afford a remedy for the recovery of a legacy, unless in a case where the executor, under certain circumstances, assumes to pay it. In the case above referred to of Atkins v. Hill, the declaration set forth a promise by the executor to pay the legacy, in consideration of assets having come to his hands, more than sufficient to pay all the just debts and legacies of the testator; and the opinion of the court, in support of the action, proceeded upon the ground of this promise, made, as the court decided, upon a sufficient consideration. The case of Hawkes v. Saunders, which followed immediately after the above, Cowp. 289, is precisely like it, as are indeed the more ancient cases referred to by Mr. J. Butler. But it will be observed, that, in all these

cases, the nature of the demand was changed, on account of the promise, from what it would have been, had the action been founded merely upon the bequest in the will; the judgment in the former, being de bonis propriis; whereas in the latter. it must have been de bonis testatoris, in case such an action could be supported. The general question, whether an action at law will lie for a legacy, came to be afterwards considered when Lord Kenyon was chief justice, in the case of Deeks v. Strutt, 5 Term R. 690, in which the court decided that the action would not lie; and the superiority of the remedy in equity was much relied upon by the judges, as a reason for not sustaining an action, which they considered to be without a precedent, except one which was decided in the time of the commonwealth, and which could only be justified by the circumstance that, at that time, no remedy existed in any other court. Although the declaration in Deeks v. Strutt, stated a promise by the executor, yet none was proved at the trial, and the court was of opinion that, from the mere circumstance of the executor having a sufficiency of assets, a promise to pay the legacy could not be implied by law. In the case now before the court, it is not stated in the bill that the executor had, at any time, promised to pay to the plaintiff the legacies demanded, but the reverse; nor even that the defendant has assets sufficient to pay all the debts and legacies of the testator. In respect to the amount to which the plaintiff may be entitled, the bill seeks a discovery, and prays for an account, those incidents (as Lord Mansfield observes in the case of Atkins v. Hill) to the equity jurisprudence, upon which the court of chancery claimed to hold plea of legacies. But even if a promise in consideration of assets were stated to have been made, still the equity jurisdiction of this court would not be excluded, as we believe has been abundantly shown by what has already been said. See, also, Blount v. Bestland, 5 Ves. 516.

2. The next reason relied upon for excluding this case from the equity jurisdiction of the court is the act of assembly of this state, before referred to. Let it be admitted, for the present, that, under this act. an action at law may be maintained in this court for the recovery of a legacy; still it would not follow that the equity jurisdiction of the court would be excluded, since the remedy, provided by the act, is not complete or adequate. For where, let us ask, could this court, in such an action, find the power to compel the executor to discover the amount of the assets which came to his hands?—The disposition which he had made of them?—The title papers of the real estate of the testator which he was empowered to sell?—The particular tracts of land sold by him under the power, and the amount for which they were sold? Where would we find the authority to impose upon the parties such equitable terms as the court might deem proper for the safety of the parties, and for the due administration of justice? It is obvious. in short, that the legal remedy contemplated by this act, although as complete, perhaps, as could well be exercised by a court of law, falls far short of that full, complete, and adequate remedy, which the legislature of the Union intended should oust the equity jurisdiction of the courts of the United States. As to the refunding bond for the security of the executor, equity always decrees it to be given.

If the counsel for the defendant meant to argue that, because the plaintiff might have maintained an action in the state court for the recovery of this legacy, therefore the equity jurisdiction of this court is ousted, we must protest against the doctrine. This case is clearly within the jurisdiction of this court. No objection can be made to the jurisdiction of the equity side of it, but that there is complete and adequate remedy on the other side of this court. It is no argument to say that the plaintiff may have such a remedy, (could it even be truly said,) in the state court. The conclusive answer is, that the plaintiff is under no obligation to resort to that jurisdiction. But we cannot admit (which has been conceded merely for the purpose of the argument just disposed of) that the common law and equity jurisdiction of the courts of the United States may be affected by state laws, which provide remedies for the state courts; or which prescribe their practice. The thirty-fourth section of the judiciary law of 1789. is very correctly stated by the court in the case of U. S. v. Wonson [Case No. 16,750], to apply only to the rights of persons and of property. In relation to these subjects, the courts of the United States are bound to consider them as rules for their decision, in cases where they apply; except where the constitution, treaties, or statutes of the United States may otherwise require or provide. As to the modes of process in suits at common law. the act of the 29th of September 1789, declared that they should be the same in each state respectively, as were then used, or allowed in the supreme courts of the same. And by the act of the 8th of May, 1792. c. 137, it is provided, that the forms and modes of proceeding in suits, in those of common law, shall be the same as were then used in the courts of the United States respectively, in pursuance of the above act; in those of equity, according to the principles, rules and usages which belong to courts of equity, as distinguished from courts of common law, subject to such alterations and additions as the said courts should deem expedient, or to such regulations as the supreme court might prescribe.

From these acts it results, that state laws, respecting rights, are to be considered by the courts of the United States as rules of decision; and that the modes and forms of proceeding at common law, as used by those courts in 1792, could not be altered, or in any

manner affected by state laws regulating the course of proceedings and practice of the state courts. unless they should be adopted by the courts of the United States. But as to suits in equity, state laws, in respect to remedies, whether prior or subsequent to the act of 1792, could have no effect whatever on the jurisdiction of the court, the act having prescribed a rule, by which the line of partition between the law and the equity jurisdiction of those courts is distinctly marked. It follows therefore, that if a state law should declare that to be a legal title, which, upon general principles recognized by courts of equity, would be considered as an equitable one, the courts of the United States would afford a legal remedy. suited to the case, to enforce it, without excluding at the same time the concurrent jurisdiction of the equity side of the court; if such a jurisdiction could be asserted as belonging to that side of the court. It was upon this ground that the supreme court sustained the legal remedy by ejectment in the case of Sims v. Irvine [supra]; the common law of this state being, that a warrant, survey, and purchase money paid, constitutes a legal right of entry. Upon the same ground it is, that this court entertains actions by assignees of choses of action, which the laws of the state permit to be assigned. But because the state courts, from a necessity, which the want of a court of chancery induces, entertain actions at law upon equitable rights; or because a statute of the state shall authorise such suits, it does not follow that such practice or such laws, can affect the marked distinction between legal and equitable remedies in the courts of the United States. The only inquiry here must be, what are the principles, usages, and rules of courts of equity, as distinguished from courts of common law, and (to borrow the expressions of the supreme court in the case of Robinson v. Campbell, 3 Wheat. [16 U. S.] 212) "defined in that country, from which we derive our knowledge of those principles." The case just referred to, is indeed an authority which so completely covers the present subject of inquiry, as to render the further investigation of it superfluous, and we shall merely add to that authority, the decision of the supreme court in the case of U. S. v. Howland, 4 Wheat. [17 U. S.] 108; which is conclusive, not only of this particular point, but of the question respecting the general jurisdiction of a court of equity, in a case where there is a remedy at law, though not as complete as that which a court of equity can offer. We think it unnecessary to prolong this opinion by noticing the alleged defects in the bill, being clearly of opinion that they do not deserve to be so called. The demurrer must be overruled, and the defendant ordered to answer.

[The defendants answered the bill, and the cause was subsequently heard upon bill and answer. The bill was dismissed. Case No. 9,-342.]