## Case No. 120.

### AKERLY v. VILAS.[1]

[3 Biss. 332; 5 Chi. Leg. News, 73; 16 Int. Rev. Rec. 154.]

Circuit Court, W. D. Wisconsin. Sept., 1872.

REMOVAL OF CAUSES—ORIGINAL PLEADINGS — DEFENSES PRESERVED — INTERLOCUTORY ORDERS— ESTOPPEL.

1. An action removed after issue joined, from the state to the federal courts, under the act of July 27, 1866, as amended by the act of March 2, 1867, must be tried in the federal courts upon the pleadings certified from the state courts, and the same force and effect must be given to them by the federal courts as in the state courts if the case had remained there.

2. In such a case the cause stands in the federal courts as it stood in the courts of the state, the former clothed with the powers of the state courts, and all rights acquired by, and all defenses allowed under the state laws are to be recognized in this court.

3. Congress did not intend by these statutes to allow either party to obtain a practice or ruling more favorable to them, or when dissatisfied in the state court to obtain a trial de novo.

4. The decision of a court upon a motion does not partake of the quality of a judgment in such a sense as to preclude the same court from a further examination of the same question. The proceedings before judgment are within its control, and orders made may be revised, and vacated or set aside.

[1][Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

5. The doctrine of estoppel does not go so far as to preclude a further inquiry and a rehearing of a motion upon an enlarged state of facts, nor prevent this court from revising an order made in the case while pending in the United States circuit court for the district from which it had been removed.

6. The doctrine of res adjudicata considered.

[7. Cited in Wolff v. Connecticut Mut. Life Ins. Co., Case No. 17,924, to the point that, where a suit comes into the federal court by removal, it brings along with it as an incident all the costs which accrued or attached under the state law during the time it remained in the state court.]

In equity. This was an action commenced in the circuit court of Dane county, in the state of Wisconsin, in 1860, to foreclose a mortgage given by the defendant to plaintiff and one Mrs. Lord, she having assigned her interest to plaintiff. The defendant answered, setting up various defenses and counter claims, among others an alleged breach of covenant by the plaintiff, for which he claimed damages in the sum of $100,000, stating that the mortgage was given to secure a part of the purchase price of certain real estate conveyed by plaintiff to defendant by deed, containing covenants of quiet enjoyment and general warranty, and averring a breach thereof by the plaintiff. The circuit court struck out the counter-claim, but on appeal the supreme court of the state held it well pleaded under the state practice, and remanded the case for further proceedings. After such decision, and after the testimony had been taken upon the issues made up in the state court, the plaintiff procured a removal of the case to the United States circuit court for the district of Wisconsin, under the act of March 2, 1867. For opinion on this removal consult 2 Biss. 110, [Akerly v. Vilas, Case No. 119.] The plaintiff, by reason of an order of the state circuit judge, prohibiting the clerk from furnishing copies of the pleadings and proceedings in the case in that court, was unable to obtain certified copies of the record, etc., from the state court, but the United States court allowed sworn copies to be filed in lieu thereof, and thereupon entered and docketed the case. The plaintiff then filed a new bill and the court entered an order or rule that defendant plead or demur thereto. Defendant moved to strike it from the files, which motion was denied. The defendant then answered on the merits and plaintiff excepted. Before the exceptions were passed upon, the defendant obtained an order, under the 6th section of the act dividing Wisconsin into two districts, transferring the case from the eastern to this district. After the transcript of the record of the eastern district was filed in this court, the defendant moved for an order that plaintiff procure and file certified copies of the process, pleadings, etc., from the state court, which motion was granted, and such copies were procured and filed. The defendant then moved for an order striking out all the pleadings filed in the federal court, and directing the action to be tried on the pleadings and issues made up in the state court. The plaintiff, at the same time, moved that his exceptions to the defendant's answer (which contained the same matters of defense and counter claims as the answer filed in the state court) be allowed. The case is reported in its various phases, in 15 Wis. 401; 21 Wis. 88, 377; 23 Wis. 207; 25 Wis. Appen. A. 703.

Finches, Lynde & Miller, for complainant.
Wm. F. Vilas & P. F. Spooner, for defendants.

Before DRUMMOND, Circuit Judge, and HOPKINS, District Judge.

HOPKINS, District Judge. This case, as presented by the motions of the respective parties, involves but two questions requiring consideration at this time.

First. Does the act of July 27, 1866, (2 Brightly, 115; 14 Stat. 306.) as amended by act of March 2, 1867, (2 Brightly, 116; 14 Stat. 558,) providing for the removal of certain cases from the state to the federal courts for trial, authorize or allow the parties to file new pleadings in the federal courts, or to change the issue, made up in the state courts before removal?

Second. If not, is this court estopped by the orders made while in the circuit court of the United States, before the removal of the cause to this district, one, requiring the defendant to answer the new bill filed in that court, and the other, denying a motion made by the defendant to strike such bill from the files? Another important question might arise, if the court should reach that point, viz.: Whether the decision on those motions involved or settled the kind of answer, or the matter of the answer, the defendant might put in. It seems to me, if it should be necessary to consider this, that the alleged estoppel might be found not to extend to or embrace the questions presented on this motion.

The defendant answered, setting up the history of the case in the state courts, and the same defenses that he set up in the state court, upon which the various proceedings recited therein had been had.

The complainant filed exceptions to that answer, which present the question, for the first time, it seems to me, as to the kind of defense and answer the defendant might interpose in this court; or, in other words, whether the case should be tried upon the issues made up in the state court, or whether it should be considered as commenced de novo, and new pleadings be filed containing only such matters of defense as are permissible under the practice and pleadings of this court in cases originally commenced herein. This is the important question and it requires careful consideration. The practice, where a case was removed to the federal court, under the judiciary act of 1789,

(1 Brightly, 128; 1 Stat.' 79,) in states where the statutes had changed the common law forms, was to file new pleadings. That act, however, only required the party removing to file copies of the process. Section 12. And, as under that, the application had to be made on the defendant's entering his appearance, it was before he had plead, or taken any steps in the case. So the courts had to treat it as a case just commenced in the federal courts, and apply to it the practice existing there.

The act under which this case was removed is essentially different from that in many respects, and requires a very different practice.

The act under which this case was removed authorizes the application to be made after issue joined, and requires the party petitioning for removal to give bail to enter in the federal court copies of all process, pleadings, depositions, testimony, and other proceedings in said suit. The act to which this is amendatory declares that "all pleadings filed or entered as aforesaid in the United States court by the defendant applying for the removal of the cause, shall have the same force and effect in every respect and for every purpose as the original pleadings would have had by the laws and practice of the courts of such state if the cause had remained in the state court." In that act, as in the amendment to it, the following provision is contained: "And said copies being so entered as aforesaid, in such court of the United States, the cause shall then proceed in the same manner as if it had been brought there by original process." This, the plaintiff's counsel claims, makes it necessary to treat the case as just commenced in this court by the service of process, and to take the usual proceedings as from that point. I cannot concur in that view. Full effect is given to that provision by holding it to mean that the jurisdiction of the court over the parties and the subject matter is as complete when brought in in that way, as when obtained by the service of original process.

The same phrase or sentence is in the original act of 1789, and in the act of 1866, and congress could not have intended it should receive any such construction, for then it would conflict with the provision in the last act declaring what were the force and effect of the pleadings filed in the state courts. The act of 1867 being an amendment of the act of 1866, according to the rule for the construction of amendments to statutes, is to be read as if incorporated into the original act, which would make the clause in that act prescribing the effect to be given to the pleadings in the state courts applicable alike to cases of removal under the amended act.

Thus construed, they mean that all proceedings necessary after the removal to a final trial or hearing shall be conducted in the same manner, and the case, as to such proceedings, shall be regarded as if originally commenced in this court. In the language of the statute, "the state courts shall proceed no further therein, and the suit shall thereafter proceed in the federal courts." If it were not so, and the proceedings were not to stand as the pleadings in the cause, why require copies to be filed? What was the object of this change from the judiciary act of 1789? That only required copies of the process to be filed; this, copies of the process, pleadings, depositions, testimony and proceedings.

I cannot construe the statute otherwise than that the issues made up in the case on its removal remain and constitute the issues to be tried in the federal courts; and as a necessary consequence, all the rights secured by either party under the practice and laws of the state where the suit was commenced, are impressed upon the case, and as full effect must be given to them in the federal as would have been given by the state courts if tried there. And by this is meant nothing more than this—that when the case is removed, it stands in the federal court as it stood in the inferior and appellate courts of the state, the federal courts clothed with the powers of all the state courts through which the case might pass, but subject of course to the limitations existing under our mixed system, and giving the proper effect only to the adjudications of the highest court of the state, as well in the past as in the future progress of the case. There is no hardship in this construction. A non-resident plaintiff voluntarily commences a suit in the state court when he might sue in the federal court. He therefore has no reason to complain. A non-resident defendant, when sued in the state courts, may remove before pleading, if he chooses; so he cannot complain. Therefore, to hold, after such voluntary action of the parties, that all rights acquired by, and all defenses allowable under the state laws, are to be recognized and preserved in the federal courts, is not inflicting any hardship upon either party, certainly not on the party entitled to a removal.

The opinion of the court, by Chase, Ch. J., in West v. City of Aurora, 6 Wall. [73 U. S.] 139, a case removed from the state court of Indiana on application of plaintiff after plea by defendant, seems especially applicable upon this point. In that he says: "They (the plaintiffs) were bound to know of what rights the defendants to their suit might avail themselves under the code (of Indiana.) Submitting themselves to its (the state's) jurisdiction. they submitted themselves to it in its whole extent." The same doctrine is laid down in Thompson v. Railroad Co., Id. 134. By the statutes of Ohio, a suit was authorized to be prosecuted in the name of the real party in interest, which was not the rule in the United States courts. The case was properly commenced under the Ohio statute, and the supreme court, in passing upon the effect to be given to that

statute, say: "If they could have maintained it in their names in the state court, they had an equal right to maintain it in their names when it arrived in the federal court."

So the fact that the defendant's answer contains defenses which would not be allowable in actions originally commenced in this court, does not determine the question of his right to interpose such an answer. If such defenses are pleadable in the state courts, they must be allowed in this court, for all the rights acquired by the defendant under the state laws before removal, are, and must be, recognized and preserved here as sacredly as in the state courts. In such cases the federal courts have to look to the state laws and practice to determine the sufficiency of the pleadings. This construction prevents abuse, while the other would allow parties to speculate and experiment upon their chances in the state courts, and, if they found the state law gave their adversaries more privileges than they would have under the practice and system of pleadings in the federal courts, they would remove their cases to that court, and thus strike out the pleadings and defenses they might not like, and commence and continue their case upon a theory better suited to their purposes.

The act does not permit any such injustice. It allows the removal of the case to the federal courts for trial in the condition it is in when removed, and provides for finishing it up from that point in those courts.

It does not confer upon the court appellate, but only original jurisdiction, concurrent with the state courts. The case is transferred cum onere. It may, therefore, be conceded that the defenses set up in this answer would not be admissible under the system of pleadings and practice of this court. But that does not dispose of the question under consideration, for congress has the power to change the form of pleadings, and adopt any system of practice and pleadings it may choose. That matter is wholly within its discretion. This it has recently done in cases other than those of equity and admiralty, and there is no doubt it could change the forms of pleadings in those cases also. Act of June 1, 1872. And it may fairly be held that by providing for the removal of cases after issue joined, they intended to establish or allow a different practice in such cases; to accept the pleadings made up in the state courts, and to try such cases on those pleadings, and, to that end, the pleadings, testimony, and all proceedings were required to be certified so that the federal court can take up the case in the condition it receives it, and try it, so far as the pleadings are concerned, as it would have been tried in the state courts, preserving to the respective parties all their constitutional rights. This construction gives force and effect to all of the provisions of the act, and seems to be its natural meaning.

The removal is allowed because it is feared that a fair trial cannot be had from "prejudice or local influence," not because the statutes of the state in reference to the practice of its courts are different from the practice of this court. Congress did not intend to condemn the codes and mode of procedure in the state courts, either as unsuited or inadequate to the attainment of justice.

The object of the statute was to secure an impartial trial of the case, having reference to the tribunals, the courts, or juries, not the systems of practice that might exist in the several states. It did not intend to allow a case to be removed because a state might adopt the code, or allow to defendants additional defenses to those permitted in the federal courts.

This case would furnish as striking an illustration of the injustice of an opposite construction as could well be supposed. It had been pending and severely litigated in the circuit and supreme courts of this state for a period of eight years before removal. It had been repeatedly before the supreme court of the state. The pleadings had been considered and sustained by that court, as in accordance with the statutes of the state. The testimony bearing upon the issues had been taken by both parties. Now, to allow a removal of the case, at that stage, to this court, and to reject all the pleadings, decisions and proceedings had in the case before removal, and commence de novo, would be a reproach upon our system of jurisprudence. But it is argued by the plaintiff's counsel, that if this construction is correct, as an original proposition, the court is estopped from so holding, because of the order of the circuit court of the United States, before removal here, denying the motion to strike from the files the bill filed therein, after the removal from the state court. It therefore becomes necessary to examine whether or not this court is thus restricted.

It is undoubtedly true that courts very seldom rehear a matter or review a decision made upon a motion upon the same facts; yet they may. The conclusive effect of a judgment of a court of competent jurisdiction is not questioned. But the question here is, whether that rule embraces this case. Did that decision partake of the quality of a judgment in such a sense as to bring it within the doctrine of res adjudicata, so as to preclude that court, if this cause had continued before it, from further examining the question presented here; and if it did not, then this court is not estopped, for it has the same control over the case as the other court would have had, and is not estopped to any greater extent than that, and it is its duty to decide all questions that may be presented, and it cannot avoid that responsibility on the ground of estoppel, unless the decision clearly brings it within the established rules on that subject. It cannot rightly withhold its judgment on the

ground of courtesy or comity unless the former decision is final. The most generous comity does not require one court to give to the decision of another court of concurrent jurisdiction any greater force than the court pronouncing it. Comity does not enlarge the conclusive operation of the doctrine of res adjudicata.

It therefore becomes necessary to examine the cases and ascertain what are the rules on the subject of res adjudicata, and to what cases, and under what circumstances they are to be applied. The reported cases have left the question in some doubt and confusion. The United States supreme court, in Breedlove v. Nicolet, 7 Pet. [32 U. S.] 413, in effect hold that decisions upon motions are not final or absolutely binding upon the court in the further progress of the cause. In that case, after several pleas in bar, the defendant offered, and was allowed by the court, to plead in abatement to the jurisdiction; and afterwards, and on the trial, that plea was disregarded and taken from the files of the court, although it had been placed there by order of the court. On error to the supreme court the point was distinctly taken, "that the plea to the jurisdiction was lawfully filed, and ought not to have been taken from the files by the court." On that question, Marshall, C. J., said: "All the proceedings are supposed to be within the control of the court while they are in paper, and before a jury is sworn or a judgment given. If so, the orders made may be revised, and such as in the judgment of the court may have been irregularly and improperly made, may be set aside." In that case, the court had ordered the plea to be filed, which was on the trial disregarded and taken off. In this case the court denied the motion to strike the bill from the files. No distinction is perceivable in the cases, so far as the question of the power of the court is concerned, and it seems to me, according to the doctrine of that case, that the orders relied upon in this do not deprive the court of the power of reconsidering those questions and of vacating those orders, if it thinks it right to do so. Such being my understanding of that case, the plaintiff's objection on the ground of estoppel cannot be sustained. Nor is this doctrine without support in other well-reasoned cases. In Simson v. Hart, 14 Johns. 62, 76, Spencer, J., who delivered the opinion of the court of errors, in speaking of decisions upon motions, says: "In the same court these decisions are not considered as so final and decisive as to furnish a bar to another and further decision of the question. Courts, to prevent vexatious and repeated applications upon the same point, have rules which preclude the agitation of the same questions upon the same state of facts. These rules are for the orderly conduct of business, and are not founded upon the principle of res adjudicata."

This language was used in the case of a bill in equity, filed to set off judgments obtained in different courts. It was objected that because a court of law which had jurisdiction had denied a motion to accomplish the same object, that a court of equity could not grant the relief asked. But the court held that the decision of the motion did not bar the suit; that such application, and the decision thereon, did not partake of the quality of a judgment, so as to be a bar, on the ground among others, "that the same court might, with entire propriety, hear a new discussion of the question." See, also, Dickenson v. Gilliland, 1 Cow. 495; Arden v. Patterson, 5 Johns. Ch. 52.

But there is another answer to the pretended estoppel. The doctrine of estoppel does not, within any rule, go so far as to prevent further inquiry and a rehearing of a motion upon an enlarged state of facts. "The decision of a court upon a motion is received as an estoppel only upon facts exactly similar. The case must be exactly commensurate with what it was when the prior order was made." People v. Mercein, 3 Hill, 399, 416. By this language it will be seen with what strictness the courts apply the rule when they recognize its existence. Mitchell v. Allen, 12 Wend. 290; Dollfus v. Frosch, 5 Hill, 493. That construction defeats the estoppel set up here. This case is changed; it is not in the exact condition it was when the orders relied upon were made. At that time certified copies of the pleadings in the state court were not filed. Since then the defendant has answered, and the plaintiff has excepted to it, and this court has granted an order after argument requiring the plaintiff to procure and file copies of process, pleadings, etc., which has been done, so that the pleadings and proceedings had in the state court are now for the first time before this court in an authentic form. I think, therefore, the case is so far changed on this motion that this court, within the most generous extension of the doctrine of res adjudicata, is not estopped from entertaining and deciding the questions now presented. But, as I at first suggested, I do not see how the decision relied upon could be extended so as to include and determine the question as to what kind of an answer the defendant might interpose. That could not properly be considered until the answer was filed. I therefore think the motion of the defendant should be granted.

NOTE, [from original report.] The federal courts follow the state practice in cases removed under the acts of congress. Republic Ins. Co. v. Williams, [Case No. 11,707.] Also, in many respects, in pleadings and practice in bankruptcy proceedings, In re Findlay, [Id. 4,789.] That congress did not intend to allow a party dissatisfied with the ruling of the state court to obtain a more favorable tribunal, or a trial de novo, consult Kingsbury v. Kingsbury, [Id. 7,817.] That at any time previous to final decree, all interlocutory orders are subject to

examination and revision, see Pullan v. Cincinnati & C. A. L. R. Co., (May term, 1873,) [Id. 11,461.] After a judgment in the state court which has been reversed by the appellate court and a new trial ordered, the case can be removed. Dart v. McKinney, [Id. 3,583.] But if in a chancery proceeding the decree is reversed, and the cause remanded with instructions to the court below to dismiss the bill, an application for removal comes too late. Boggs v. Willard, [Id. 1,603.]