WHITTENTON MANUF'G CO. *v.* MEMPHIS & OHIO RIVER PACKET CO.
and others.

(*Circuit Court, W. D. Tennessee.* November 26, 1883.)

1. REMOVAL OF CAUSES — REPLEADING — CONSTITUTIONAL LAW — TRIAL BY JURY.
Where a suit at common law has been removed from a state court in which it has been conducted under the forms of procedure belonging to a court of equity, the constitution and laws of the United States require that there must be a repleading to conform to the practice of the federal court as a court of law.

2. SAME — REMOVAL ACTS CONSTRUED — EFFECT OF THE REMOVED PLEADINGS.
This repleading may require more than one suit, and on both sides of the docket, but this is unavoidable in a jurisdiction keeping up as persistently as the federal laws do the distinctions between law and equity; and the force and effect of the proceedings in the state court are preserved by moulding them to suit the requirements of the case in the process of distribution between the two jurisdictions.

3. SAME — UNIFORMITY IN THE FEDERAL PRACTICE.
It is only by this construction of the removal acts that the distinctions between law and equity jurisdiction can be observed in practice, and that uniformity secured which it is plainly their intention to enforce. There cannot be one practice for causes removed from the state courts and another for suits originally commenced in the federal court.

4. SAME — SECTION 639, REV. ST. — ACT OF MARCH 3, 1875 — PARTIAL REPEAL.
The last clause of section 639, Rev. St., taken from the act of July 27, 1866, enacting that "the copies of the pleadings shall have the same force and effect *in every respect and for every purpose* as the original pleadings would have had by the laws and practice of such state if the cause had remained in the state court," has been repealed by the act of March 3, 1875.

5. SAME — PLEADING UNDER THE TENNESSEE CODE.
Although the Code of Tennessee does not permit an action to fail for any defect of form in pleading and allows a suit "upon the facts of the case," it does not authorize a suit at common law to be prosecuted in a court of law under the form of pleadings belonging to a court of equity.

Motion to Replead.

The plaintiff, under an act of the Tennessee legislature of March 23, 1877, *c.* 47, which enacts that the jurisdiction of all civil causes of action now triable in the circuit court, except for injury to person, property, or character, involving unliquidating damages, is hereby conferred upon the chancery court, which shall have and exercise concurrent jurisdiction thereof along with the circuit court, filed its bill in the chancery court of Shelby county to recover damages from the defendants for an alleged breach of contract by failure to deliver to the plaintiff in the same good order in which they were received for transportation about 1,000 bales of cotton. The bill, which is in the usual form of a bill in equity addressed to the chancellor, proceeds, in about 27 pages of manuscript, to relate in detail the purchase by plaintiff of the several lots of cotton; that these lots were, respectively, in the warehouse of the vendors, where they were selected, examined, sampled, etc., and found to be in good condition and shipping order; that, after the purchases, they were sent either to the Mammoth Cotton Compress Company or to the Union Cotton Com-

press Company to be compressed and prepared for shipment according to a contract between the plaintiff and said companies, at an agreed price; that after compression the bales were delivered to the defendant packet company for transportation to the plaintiff's mills in Massachusetts; that the defendant packet company executed bills of lading, which are set out by exhibits, etc.

The bill then states that the cotton was shipped to plaintiff's mills, and proceeds with particularity to state, on information and belief, the dates, names of the steamers of the packet company, the several lots, and the compress company from which received by the steamers, and other matters connected with the shipments; that the cotton reached plaintiff, but that "when so delivered the said cotton was not in good order and condition," describing the condition as received, etc.

The bill "charges," on information and belief, that "the cotton was carelessly and negligently exposed to the weather, without adequate protection or care by the said Mammoth and Union compress companies and the packet company, and that the damage and injury done to it were produced by, or the necessary result of, the negligence and want of care of said companies respectively, and while they so had custody," etc.

It then alleges that plaintiff notified the railroad company of its claim for damages, and subsequently notified the packet company and the compress companies, all refusing compensation, and avers that the whole damage done by the defendant companies amounts to $5,000, and that the three defendants are jointly and severally liable for the same.

The bill further states that the receipts taken by the plaintiff from the compress companies respectively were delivered to the packet company, and that the plaintiff believes they are now under the control of defendants, or one of them, and prays "they be required to produce the same for the purposes of this suit and to be used on the hearing," etc.

Another allegation of the bill is that, since the transactions mentioned, the two compress companies have become merged into a new compress company; that plaintiff had endeavored to procure information necessary to enable him to determine when, and how, and by whom the damages to the cotton was done, by addressing a letter to the company, etc., and that no response had been made, the letter being exhibited and filed as part of the bill.

The bill also charges that the Merchants' Compress & Storage Company, in the place and stead of the other two compress companies, is, with the packet company, justly indebted to the plaintiff, "by reason of the damage done to the cotton aforesaid, in the sum of $5,000 and interest."

The bill names the agent of defendant or its superintendent, and prays process to make the packet company and the compress company defendants; that they be required to answer; that the amount

of the damage be ascertained and fixed, and for the proper judgment or judgments and execution, and that, if necessary, attachment issue against the non-resident Ohio corporation,—the packet company,—and for general relief.

Subpœna issued, and was served, but no attachment. The compress and storage company appeared and demurred, assigning three grounds of demurrer, and the packet company also appeared and filed a separate demurrer on four grounds. Without disposing of these demurrers the plaintiff obtained leave to amend the bill, and by an amended bill, in about six additional pages of manuscript, states substantially that it is advised that the cotton was in the custody of the compress companies, as the agents of the packet company, from the time the bills of lading were signed until the same was delivered to the respective steamboats. The amended bill prays the same relief as the original bill.

After the amended bill was filed the plaintiff removed the case to this court, when the transcript was filed and docketed on the law side. The defendants moved that the plaintiff be required to replead according to the practice of the courts in suits at law.

*H. C. Warinner* and *Metcalf & Walker*, for the motion.

*Randolph & McHenry, contra.*

HAMMOND, J. In whatever form the subject has presented itself,—whether as a matter of jurisdiction, pleading, or practice, as to methods of relief, defenses, review, or what not,—the supreme and inferior federal courts have, with inexorable firmness, insisted upon preserving the *essential* distinctions between law and equity by administering them separately, as required by the constitution and laws of the United States. The cases are far too numerous for citation here, but will be gathered in a foot-note for consultation in support of this opinion. They commence with the organization of the courts, and are to be found in almost every volume of the reported decisions. It is a distinction that inheres in the system by virtue of constitutional commands, and it will be found upon close observation that the federal constitution has protected the right of trial by jury in a manner that imposes restrictions upon legislative power more effectual, perhaps, than those found in many of the state constitutions. It necessarily results from the requirement that, in all controversies of legal cognizance, there shall be preserved a right of trial by jury, and that no fact so tried shall be re-examined in any court otherwise than according to the rules of the common law, that the original trial shall be likewise according to those rules in all essential and substantial particulars. Merely taking the verdict of 12 men, no matter how, is not, in the sense of our federal constitution, a trial by jury; and it is impracticable, as well as impossible, to conduct the original trial according to rules unknown to the common law, and in subversion of them, and then, on re-examination by writ of error in an appellate jurisdiction, or, it may be, on motion for new trial, or otherwise, in

the tribunal of first instance, to obey this mandate of the constitution, and conduct those proceedings "according to the rules of the common law." Const. U. S. Amend. 7. The whole proceeding, from beginning to end, must be, *ex necessitate rei*, a common-law proceeding; not necessarily according to the precise forms of the common law,—reformation in procedure being open to legislation,—but always there must be a trial substantially according to the course of the common law.

Now, this consideration alone has convinced me, aside from all others, that when parties bring their "*suits at common law*" from a state court of equity, where, by state legislation, they have been permitted to conduct them under the forms of procedure known to those courts in ancient times, into this court, they must, in the nature of the case, by repleading, convert their "bills," exhibits, disclaimers, *pro confessos*, answers, cross-bills, pleas, replications, petitions, affidavits, *jurats*, and the like into declarations and pleas according to the forms for trials of suits at common law prevailing, not only in this court, but as well in the law courts of the state of Tennessee. Even in the state court of equity, from which this suit comes, when a jury is demanded, as it may be, the trial is not on the bill, answer, etc., but, by statute, the parties are required to make up their issues in a separate writing for the jury, which is, in effect, what we require them to do here by repleading. Manifestly, that method of sifting out the issues to be tried is not open to this court, and it can only be accomplished by repleading.

It matters not that this may result in two or more separate suits, with some at law and some in equity. This comes from state legislation allowing the parties to litigate their several controversies in one suit, a method forbidden to this court, which must administer law and equity separately. If the parties deem this an advantage they should remain in the state court where it can be done. Nor is it practicable to have a different rule for a suit which is removed when the "bill" only has been filed, from one which is brought here at some later stage. It would be a hybrid proceeding, producing confusion, if not disadvantage, to the defendant, to allow the plaintiff to use an elaborate and voluminous "bill" as the vehicle for his case and confine the defendant to the simple form of a plea at law.

Acting on these views some years ago, in the case of *Levy* v. *Amer. Cent. Ins. Co.*, (not reported,) it was ruled by this court that there must be, in such cases, a repleading when the suit is removed; and the practice has been so until challenged in this case. In that case, as in this, the state chancery court had acquired jurisdiction under the act of March 23, 1877, *c.* 47, giving the equity courts jurisdiction concurrently with courts of law of all civil causes not founded in tort. Acts 1877, p. 119. And, it may be remarked, that in addition to this source of jurisdiction over purely common-law suits, the state chancery courts have, for a very long time, under our attachment

laws, and also by the statutes regulating their practice, acquired jurisdiction over all manner of civil causes of legal cognizance; as, for example, by a failure of the parties to object to the jurisdiction by special plea or demurrer, an answer being deemed a waiver of all objections to jurisdiction.  The statutory provisions made for a finding of facts by a jury in all equity cases is considered an answer to all constitutional objections to such legislation.  Tenn. Code, 4309, 4321; *Jackson* v. *Nimmo*, 3 Lea, 597; *Scott* v. *Feucht*, 1 Memphis L. J. 40; *Saudek* v. *Turnpike Co.* 3 Tenn. Ch. 473; 1 Memphis L. J. 3.

It was, therefore, an important question whether or not, when any of these causes, of which the state equity court had such a vast and almost inexhaustible jurisdiction, are removed to this court and go to the law side of our docket, as all concede they must, they shall be submitted to the jury on the voluminous records and pleadings in use in our courts of equity, (for they are all conducted in that form in the state court, and in this form they necessarily come here,) or the parties be required to replead according to the forms of a court of law.  As before remarked they are not required to be so submitted in the state courts, the difficulty being overcome by statutory provisions requiring the parties, under the supervision of the chancellor, to draw up in writing, "according to the forms of a court of law," the issues of fact to be submitted to the jury.  Tenn. Code, 3156, 4468.  This provision is not, of course, available in this court, and the same end is reached, and can be reached, only by pleading *de novo.*

In the case of *Levy* v. *Ins. Co.*, *supra*, there was a suit in the chancery court on a policy of fire insurance under the form of a bill in equity, which, in addition to a claim for the loss suffered, prayed, as in the case now under consideration, for a discovery, by the agent of the company, of certain papers in his possession, these being the plaintiff's invoices, and also for an injunction to prevent him from sending them away.  The defendant company filed an answer, and, as it might under the state statute, but not under the federal practice, made that answer a cross-bill, alleging fraud by the plaintiff in the procurement of the policy, for which it prayed to have the document canceled.  Tenn. Code, 4323.  The case was then removed by the defendant company to this court under the act of congress of March 3, 1875, (18 St. 470.)  The plaintiff moved to docket the case on the law side of the court, for leave to file a declaration as at law and for a rule on the defendant to plead thereto.  The defendant, on the other hand, moved to docket the case on the equity side of the court.  It was held that the plaintiff should declare on his policy of insurance, according to our practice in cases at law, and the defendant plead thereto, and that if the plaintiff should find section 792 of the Revised Statutes inadequate to compel a production of the invoices, and should need discovery thereof or should need the injunction he asked, it was manifest that, under our federal practice, he must resort to the equity side of the court for that relief in aid of his

suit at law; while the defendant must, since we have in this court no statute permitting an answer to be made a cross-bill, and certainly no power in a court of law to grant the relief it asked, likewise resort, if need there be, to the equity side of the court with an independent bill or a cross-bill, according to our practice, in any suit the plaintiff might file on that side, to restrain the plaintiff's suit on the policy until it could be canceled for the alleged fraud.

Clearly, this was the only possible solution of the complication in a jurisdiction keeping up the distinctions between law and equity so persistently as the federal courts are required to do; and nothing but the anomalous legislation of Tennessee, which had no effect in the federal court, could unite all these matters in one suit, however desirable such a practice might be. Yet there is no need of any new cost bonds, or new process in any of these several suits in which this conglomerate state court suit must be divided, but only a distribution of them, according to the congenital demands of our own practice; and, if any orders have been made, or rights acquired, in the state court, these are all preserved in the federal court by a like process of distribution; not by giving to the pleadings exactly the same force and effect in every respect which they had in the state court, for that is impossible, if the union of all the causes of action in one suit be insisted on here as one of the rights preserved, but, in all other respects, saving their force and effect in this process of distribution by treating the bonds, process, pleadings, and orders as if they had been made in suits originally commenced in the federal court and the same proceedings had been taken there, and now moulding them into one or more suits on either side of the jurisdiction, as the circumstances of the case may require. This is precisely what we are commanded to do by the removal acts, and what they mean by directing that the pleadings, process, and other proceedings shall have the same force and effect here as in the state court, which requirement of the statute has been so much relied on in argument to defeat this motion, as it was relied on in the former case.

It is now argued,—as it was in that case,—with great earnestness, that these removal cases are, by force of the statute, on a different footing from those originally brought here, and that although the act of congress by its terms requires that "the cause shall proceed in the same manner as if it had been brought there by original process," yet, by like positive command, "the copies of the pleadings shall have the same force and effect in every respect, and for every purpose, as the original pleadings would have had by the laws and practice of the courts of such state if the cause had remained in the state court." Rev. St. § 639. It is a sufficient reply to this argument to say that nowhere is it manifest that congress intended to have one practice for original suits and another for removed suits, and the contrary intention of uniformity in all is apparent from the beginning of these removal acts to the present time. Moreover, there is no more ca-

pacity in our federal courts for mingling the separate jurisdiction of law and equity in causes removed than in those originally commenced, for it is a constitutional separation that must be preserved; and whatever may be the power of congress to preserve the substance and yet change the form of procedure, until some more specific machinery—like that already adverted to in the Tennessee state courts for submitting issues to a jury "according to the forms of a court of law" where there is such a commingled practice—is provided by congress, such a practice is impossible with us.

I have already pointed out a more reasonable interpretation of this language in the statute, but there is still another answer to the argument based upon it. It is to be observed that while a clause in section 3 of the act of March 3, 1875, enacts, as in section 639 of the the Revised Statutes, that the removal cause "shall proceed in the same manner as if it had been originally commenced in the said circuit court," and section 6 of the same act, "that the circuit court of the United States shall, in all suits removed under the provisions of this act, proceed therein as if the suits had been originally commenced in said circuit court, and the same proceedings had been taken in such suit in said court as shall have been had therein in said state court prior to its removal," nowhere does that act contain the last above-quoted clause of section 639 of the Revised Statutes, providing that the copies of the pleadings in the state court shall, *in every respect and for every purpose*, have the same force and effect as in the state court. It is clearly repealed by the repealing clause in section 10 of the act of March 3, 1875, (18 St. 470–473.) This repealed clause of section 639 of the Revised Statutes had its origin in the act of July 27, 1866. from which it was carried into the Revision, (14 St. 306, 307.) The act of March 3, 1875, returns to the language of the judiciary act of September 24, 1789, somewhat amplified, as amended by the acts of July 27, 1866, and March 2, 1867, but with this clause of the act of 1866 omitted. Rev. St. § 639; 1 St. 79; 14 St. 306, 558; 18 St. 471. And a critical examination of the cases cited in the foot-notes will show that the act of 1875 in the sections already cited, taken in connection with its section 4, which provides for the continuing force and effect of all *process, attachments, injunctions.* etc., bonds, undertakings, securities, etc., and all orders and other proceedings prior to removal, has, with the utmost care, expressed the judicial result of the construction of all the acts preceding it, including the omitted or repealed clause of the act of 1866, which was misleading in its language, and therefore omitted.

This last act of 1875, construed by the decisions, has a very plain meaning in respect to the subject of procedure after removal; and this is, that while every right and substantial advantage the parties had in the state court prior to removal is preserved to them with scrupulous care, in giving them the benefit of that right, the federal court

proceeds, and in the present state of legislation by congress must proceed, according to its own methods of procedure and rules of practice, and not that of the state courts, unless they be substantially the same. The federal court does not stickle for any mere idle or technical form, but will use on either side of the jurisdiction the removed pleadings as they stand, if by them and through them it can, acting independently of state regulation governing the suit before its removal, preserve the essential distinctions between legal and equitable modes of trial and the substantial rights of the parties growing out of those distinctions.

These are in suits of legal cognizance *a trial by jury*, not necessarily according to the precise forms, but substantially *according to the course* of the common law, and, in suits cognizable in a court of equity, a trial according to the practice of those courts as prescribed by our rules of practice. If the state court pleadings can be held, whatever their form, to accomplish this purpose, no repleading can be necessary, otherwise there must be a reformation of the pleadings and a recast of the litigation to accomplish that result, and this depends upon the nature of the particular suit and the relief sought by it as well as the form in which it has been conducted in the state court.

It is apparent that, in cases like this, there must be, by this rule, a repleading in this court, as there must have been, if the case were to be tried by a jury in the state court, had it remained there. But it is insisted that under the practice conformity act of June 1, 1872, (17 St. 197; Rev. St. § 914,) this court is bound to the state practice; that the Code of Tennessee abolishes all forms of actions, and allows the plaintiff to sue on the facts of the case; and that inasmuch as this "bill in chancery" states the facts it may, under the state practice, be treated as a sufficient pleading in a court of law. I have never known a common-law suit prosecuted under the forms of a "bill in equity" in *a court of law* in Tennessee. Such a proceeding would be as much of an anomaly in those courts as in the court of king's bench 100 years ago, notwithstanding our reformed' pleadings under the Code. There is, therefore, no state practice like that suggested, imposed upon this court by the practice conformity act of 1872. On the same principle as that contended for, any letter or series of letters "stating the facts" and claiming damages, or any memorandum, deposition, affidavit, memorial, article in a newspaper or magazine, or other "statement of the facts" might be filed and treated as a declaration in a court of law. I do not understand the law of Tennessee to be so. The Code abolishes all forms of action so far as to obliterate the technical distinctions between them, but still requires *pleadings* in courts of law to be in the form of *declarations* and *pleas*, and the form of petition and answer or bill and answer is not recognized in the statutes nor used in practice. The models prescribed are those of the common law, stripped of useless verbiage and those technical char-

acteristics which distinguish them as actions of *assumpsit* or *ase, trespass* or *trover*, and the like, but they are yet in form and substance *declarations* and *pleas* and constitute a compact and admirable system of pleading, which it is a pity the legislature has spoiled by giving parties the option to plead "*as at common law*," and it would be the more a pity to give a further option of pleading *as in equity*, which we are asked to do in this case. Act 1859–60, *c. 33*, Tenn. Code, § 2917*a*.

It is true that no action is allowed to fail because of any defect in form; and any form complying substantially with the Code requirements would be sustained however inartistic; but, after all, the Code requires that the pleadings shall state "only material facts, without argument or inference, as briefly as is consistent with presenting the matter in issue in an intelligible form," and "in all actions at law the cause of action shall be stated clearly, explicitly, and as briefly as possible." Tenn. Code, §§ 2751, 2881. This would seem to preclude the argumentative and inferential statements of this "bill in equity" and its "exhibits," proper enough in a court of chancery, but not at all like the forms prescribed by the Code for a *declaration* in suits at law with which substantial compliance is required. Id. §§ 2939, 2940. Another section enacts that "Any pleading possessing the following requisites shall be sufficient: (1) When it conveys a reasonable certainty of meaning; (2) when by a fair and natural construction it shows a substantial cause of action or defense." Id. 2884. This means, of course, any pleading substantially in the forms prescribed by the Code; and the very next section requires the court to require a more specific statement, if the pleading be defective in the first particular above mentioned. Id. 2885. I do not doubt that, taken altogether, the Code requires, in suits at law, a pleading in the form of a *declaration*, but saves to the party stating the facts of his case, in any form whatever, his right of action, subject to the power of the court to compel him to reform the pleadings, if not already in substantial compliance with the requirements of the Code. Nor do I doubt, on the other hand, that, if taken in time, an objection to an action at law brought in a state law court, under the form of a bill in equity, would be sustained and the party required, as here, to put his pleading in the form of a declaration at law. Id. 2746–2753, 2863–2879, 2880–2940; 3 Meig, Dig. (2d. Ed.) 2140, 2133–2151; *Cherry* v. *Hardin*, 4 Heisk. 199, 203; *Stover* v. *Allen*, 6 Heisk. 614.

The pleadings in a court of equity are so ill-adapted to present the issues to a jury that I doubt if congress itself could impose them on a federal court of law without giving the act "an unconstitutional operation dangerous to the trial by jury." *Phillips* v. *Preston*, 5 How. 278, 289. It certainly could not, without some such contrivance as we have in the state courts of equity in Tennesce for sifting out

the issues and presenting them in a more simple form, less embarrassing to the prosecution or defense of a case before a jury.

Motion granted.

1. Consult on the subject of the distinctions between law and equity in procedure generally in the courts of the United States the following cases: *Wiscart* v. *Dauchy*, 3 Dall. 321; *Robinson* v. *Campbell*, 3 Wheat. 212; *U. S.* v. *Howland*, 4 Wheat. 114; *Wayman* v. *Southard*, 10 Wheat. 1, 41; *Parsons* v. *Bedford*. 3 Pet. 433; *Beers* v. *Haughton*, 9 Pet. 329; *Livingston* v. *Story*, Id. 652; *Parish* v. *Ellis*, 16 Pet. 451; *Phillips* v. *Preston*, 5 How. 278; *Bennett* v. *Butterworth*, 11 How. 674; *Neves* v. *Scott*, 13 How. 268; *Pennsylvania* v. *Wheeling Bridge Co.* 13 How. 518; *Graham* v. *Bayne*, 18 How. 60; *Hipp* v. *Babin*, 19 How. 276; *McFaul* v. *Ramsey*, 20 How. 525; *Jones* v. *McMasters*, 8; Id. *Fenn* v. *Holme*, 21 How. 481; *Farni* v. *Tesson*, 1 Black, 314; *Noonan* v. *Lee*, 2 Black, 509; *Thompson* v. *Railroad Cos.* 6 Wall. 134; *Ins. Co.* v. *Weide*, 9 Wall. 677; *Walker* v. *Dreville*, 12 Wall. 440; *Ex parte McNeil*, 13 Wall. 236; *Tyler* v. *Magwire*, 17 Wall. 253; *Hornbuckle* v. *Toombs*, 18 Wall. 648; *Nudd* v. *Burrows*, 91 U. S. 426; *Indianapolis, etc., R. Co.* v. *Horst*, 93 U. S. 299; *Newcomb* v. *Wood*, 97 U. S. 581; *Van Norden* v. *Morton*, 99 U. S. 378; *Smith* v. *Railroad Co.* Id. 398; *Ex parte Boyd*, 105 U. S. 647; *Mayer* v. *Foulkrod*, 4 Wash. C. C. 349; *Baker* v. *Biddle*, Bald. 394; *Gier* v. *Gregg*, 4 McLean, 202; *Gordon* v. *Hobart*, 2 Sumn. 401; *Byrd* v. *Badger*, 1 McAll. 443; *Loring* v. *Downer*, Id. 360; *Sluford* v. *Cain*, 1 Abb. (U. S.) 302; *Lamar* v. *Dana*, 10 Blatchf. 34; *Montejo* v. *Owen*, 14 Blatchf. 324; *Garden City Co.* v. *Smith*, 1 Dill. 305; *Weed Sewing-machine Co.* v. *Wicks*, 3 Dill. 261; *Hall* v. *Mining Co.* 1 Woods, 544; *Benjamin* v. *Cavaroc*, 2 Woods, 168; *Kimball* v. *Mobile Co.* 3 Woods, 555; *Butler* v. *Young*, 1 Flippin, 276; *Beardsley* v. *Littell*, 6 Cent. Law J. 270; *Sage* v. *Touszky*, Id. 7; *Stone Cutter Co.* v. *Sears*, 9 FED. REP, 8; *Benedict* v. *Williams*, 11 FED. REP. 547; *Werthein* v. *Continental Ry. & T. Co.* Id. 689; *U. S.* v. *Train*, 12 FED. REP. 852; *Steam Stone Cutter Co.* v. *Jones*, 13 FED. REP. 567.

2. Consult on the special subject of these distinctions in relation to matters of pleading and the removal of causes the following cases: *Gaines* v. *Relf*, 15 Pet. 9; *Minor* v. *Tillotson*, 2 How. 392; *Randon* v. *Toby*, 11 How. 493; *Green* v. *Custard*, 23 How. 484; *Gridley* v. *Westbrook*, Id. 503; *Partridge* v. *Ins. Co.* 15 Wall. 573; *The Abbottsford*, 98 U. S. 440; *Barrow* v. *Hunton*, 99 U. S. 80; *Hurt* v. *Hollingsworth*, 100 U. S. 100; *West* v. *Smith*, 101 U. S. 264; *Duncan* v. *Gegan*, Id. 810; *Jifkins* v. *Sweetzer*, 102 U. S. 177; *King* v. *Worthington*, 104 U. S. 44, 50; *Hewett* v. *Phelps*, 105 U. S. 393, 396; *Toucey* v. *Bowen*, 1 Biss. 81; *Akerly* v. *Vilas*, 3 Biss. 332; *Brownell* v. *Gordon*, 1 McAll. 207, 211; *Clarke* v. *Protection Ins. Co.* 1 Blatchf. 150; *Charter Oak Ins. Co.* v. *Star Ins. Co.* 6 Blatchf. 208; *Fisk* v. *Union Pac. R. Co.* 8 Blatchf. 299; *Dart* v. *McKinney*, 9 Blatchf. 359; *Merchants' Nat. Bank* v. *Wheeler*, 13 Blatchf. 218; S. C. 3 Cent. Law J. 13; *Bills* v. *Railroad Co.* 13 Blatchf. 227; *Oscanyan* v. *Winchester Arms Co.* 15 Blatchf. 79, 87; *La. Mothe Manuf'g Co.* v. *Tube Works*, Id. 435; *Stevens* v. *Richardson.* 20 Blatchf. 53; [S. C. 9 FED. REP. 191;] *Ins. Co.* v. *Stanchfield*, 1 Dill. 424; *Zinkeison* v. *Hufschmidt*, 1 Cent. Law J. 144; *Thorne* v. *Towanda Tanning Co.* 15 FED. REP. 289.

3. Consult, also, generally, the following text-books: Dill. Rem. Causes, (2d Ed.) 40, 42, 45, 46, 47; Bump, Fed. Proc. 180, 209, 237; Thatcher, Pr. C. C. 305–307, 309, 310; Spear, Fed. J. 473, 486, 521, 522, 747, 764.