JOSEPH MAGGI *vs.* BENJAMIN CUTTS.

**Essex.** Nov. 10, 1877. — Jan. 5, 1878. MORTON & SOULE, JJ., absent

In an action for personal injuries caused by an obstruction in a highway, where the evidence is conflicting as to the cause of the accident and the general character of the horse which the plaintiff was driving at the time of the accident, evidence of the character and habits of the horse, as well after as before the accident, is admissible.

TORT for personal injuries alleged to have been sustained by an obstruction in the highway, placed there by the defendant. Trial in this court, before *Ames*, J., who allowed the following bill of exceptions :

" It appeared in evidence in this case, that on the evening of November 19, 1875, at about half past six o'clock, the plaintiff was riding in a wagon through Sewall Street, which, for the purpose of this case, was admitted to be a public way in Salem, and which was about twenty or twenty-one feet wide, and there fell or was thrown from his wagon and received the injuries for which he seeks to recover damages.

" For a few days previous to this accident, and upon said November 19, the defendant, whose blacksmith shop was upon Sewall Street, had been making an excavation for a cellar under his building, and had thrown the dirt, gravel and loam therefrom into the street, and at the time above named there was a pile of such gravel or loam standing in the street about two and a half feet high, extending about ten feet along the street, and from a third to half the distance across the street, the exact dimensions of the pile being in dispute.

" It was contended by the plaintiff, and he introduced evidence to show, that, not observing the obstacle, and using due care, he had driven his horse upon the pile aforesaid so far that the forward wheels touched or went into it; that the horse had fallen upon the pile and the plaintiff was thus thrown violently upon the ground ; that the horse was helped upon his feet and stood quietly till the plaintiff was put into the wagon.

" In the course of the trial, the plaintiff, in putting in his case, called witnesses who testified, among other things, that the plaintiff had owned the horse, which he was driving, two years,

that the horse was a good driving horse, that he was a good, kind and clever horse, and had no vices; on cross-examination the plaintiff testified that when he first bought him he showed some signs of being a kicking horse, and did in fact kick upon one or two occasions, and that he was then placed for a few days in the hands of one Currier, who was accustomed to horses; and Currier testified that he showed some indications, by whisking his tail and otherwise, that he was a kicking horse, and that he kicked once while with him; but that after driving him he did not think he was a kicking horse, and that he tried him for about a month in order to ascertain.

"Dominick Maggi, a witness for the plaintiff, who testified on the examination in chief as to the good character of the horse, upon cross-examination testified that on one occasion, subsequent to the accident, the horse, which was then harnessed in a pung or sleigh, whisked his tail, had gone round, had stopped more than once, and that he found the horse had got his leg over the shaft, and that after the shaft was put into its proper place he had no further difficulty.

"The defendant denied the truth of the plaintiff's account of the manner in which the accident had occurred, and introduced evidence tending to show that neither the plaintiff nor the wagon touched the pile of dirt at all; and, as one mode of accounting for the accident, contended that the horse might have stumbled or fallen, or stopped suddenly, without reference to the pile of dirt.

"There was no evidence tending to show that the horse at the time of the accident baulked or stumbled, or became unmanageable or contrary, or that the accident was caused by any vice, fault or defect on the part of the horse, or that any such vice, fault or defect contributed to the accident; but on the contrary it appeared that immediately after the accident he was perfectly quiet and controllable.

"In this connection, and for the purpose of controlling the plaintiff's testimony as to the character of the horse, and for the purpose of showing generally that the horse was vicious and unsafe at the time of the accident, and was known to be such by the plaintiff, the defendant offered evidence of one Teague, who testified that, just before Thanksgiving time in 1875, he

had seen the horse fall at the corner of North Street, in Salem, and of one Williams, who testified that in August, 1875, he had seen the horse kicking; he then offered to prove instances of the horse's kicking and stumbling since the accident, and also that the horse baulked, that he had several times behaved in a vicious, unruly and restive manner, and had bolted in the street.

" All evidence of this description referring to any time before the accident was admitted, but the evidence of all such acts as were subsequent to the date of the accident the presiding judge refused to admit."

The jury returned a verdict for the plaintiff for $7608.33; and the defendant alleged exceptions.

*W. D. Northend & J. A. Gillis,* for the defendant.

*S. B. Ives, Jr. & L. S. Tuckerman,* for the plaintiff.

LORD, J. The fact that a horse driven by the plaintiff misbehaved at the time an injury was received, though such misbehavior contributed to the injury, does not necessarily preclude the party from recovering. The misbehavior may have been accidental, or from causes for which the plaintiff was under no responsibility. The misbehavior, to bar the plaintiff from recovering, must be either through the fault of the plaintiff, or by reason of a vice of the horse, for which the plaintiff is in law responsible. Whether or not it is a vice depends largely upon the question whether the misbehavior was only in a single instance, or occasional, depending upon other causes, or whether it was the habit of the horse. And, in order to establish the fact that the misbehavior was occasioned by the viciousness of the horse, it has been held to be competent to show that such misbehavior is habitual, and instances of misbehavior, as well after the injury as before, have been held competent to prove the habit. *Todd* v. *Rowley,* 8 Allen, 51. The limit of time within which such misbehavior may be proved must depend largely upon the discretion of the presiding judge. It is not, however, wholly within such discretion. It is the right of a party to prove such instances immediately before and immediately after; but when instances are offered so remote from the time of the injury as, in the opinion of the presiding judge, to mislead or distract the minds of the jury, he may in his discretion reject the evidence; and if, in the opinion of the court,

such evidence was so remote as to be a fit subject for the discre
tion of the presiding judge, that discretion will not be revised
by the full court.

In this case, the evidence offered was not rejected because, in
the opinion of the presiding judge, it was too remote, but was
rejected as incompetent, without the exercise of any discretion
upon the question of remoteness. It therefore is to be consid-
ered whether the evidence was in its nature competent and ad-
missible. The only doubt upon this subject is raised by the
peculiar phraseology used in the bill of exceptions. The lan-
guage is this : " There was no evidence tending to show that the
horse at the time of the accident baulked or stumbled, or be-
came unmanageable or contrary, or that the accident was caused
by any vice, fault or defect on the part of the horse, or that any
such vice, fault or defect contributed to the accident." This cer-
tainly cannot be construed as literally accurate. If it were to
be, the whole evidence on the part of the plaintiff, as to the
qualities of the horse, was entirely immaterial, and all evidence
of the vicious character of the horse, as well before as after the
injury, was incompetent and inadmissible, for the character of
the horse is wholly and utterly immaterial, unless his conduct at
the time contributed to the injury.

The phrase thus construed is also entirely inconsistent with
another portion of the bill of exceptions, which is in these
words: " The defendant denied the truth of the plaintiff's ac-
count of the manner in which the accident had occurred, and
introduced evidence tending to show that neither the plaintiff
nor the wagon touched the pile of dirt at all; and, as one mode
of accounting for the accident, contended that the horse might
have stumbled or fallen, or stopped suddenly, without reference
to the pile of dirt." This certainly shows, not only that the de-
fendant contended that the injury was caused not merely by the
contributory fault of the horse, but solely by reason of his vicious
character ; and if it were true that neither the plaintiff nor his
carriage reached the pile of dirt, as the defendant introduced
evidence tending to show, then it was clearly competent for the
defendant to show the vices of the horse, in order to show that
it was by reason of those vices, and not by the obstruction in the
way, that the plaintiff received his injury, and this was a fact to

be determined by the jury, and not to be passed upon by the court.

Undoubtedly the true construction of the paragraph in the bill of exceptions is, that no witness testified to any observed misbehavior of the horse at the time. It does not appear by the bill of exceptions whether the plaintiff was alone at the time of the injury, or whether he was accompanied by any person, or by whom. If he was alone, and testified to the good behavior of the horse, and that the horse actually ran upon the pile of dirt, and other witnesses, subsequently congregated, testified that the carriage had not reached the pile of dirt, and that the wheel tracks showed the carriage stopped before the horse had reached the dirt, the jury might well have found that the pile of dirt was not the cause of the injury. It was a question of fact for the jury. It might have been that the pile of dirt caused the horse to stop without fault upon his part, but it was purely a matter for the jury, who might have found that it was the viciousness of the horse, and not the pile of dirt, which caused the injury ; and if, upon a view of all the evidence, they were satisfied that the horse stopped before he reached the pile of dirt, the very fact that the plaintiff attempted to mislead them by testifying that the horse actually ran into the pile of dirt would be a reason why the jury should more carefully scrutinize all the facts in reference to the character of the horse, in con nection with the attempt of the plaintiff to mislead them as to the exact locality and mode in which his injury was received.

It is contended, on the part of the plaintiff, that the verdict in this case should not be set aside, because the evidence rejected was immaterial, and because its admissibility was within the discretion of the presiding judge. As to the last point, we have already said that the evidence was not rejected as matter of discretion, but was ruled upon as matter of law, and it nowhere appears that the presiding judge would have rejected the evidence as matter of discretion, unless he had deemed it incompetent in law. Upon the other ground of immateriality, we understand the argument of the plaintiff's counsel to be based solely upon the paragraph upon which we have commented, and which he contends is to be taken as literally true. Even if it could be so claimed, the rejected evidence is evidence which bears upon

that precise point, and it would be a strange begging of the question, when evidence is offered tending to prove a particular fact, to say that the evidence is immaterial because no other evidence had been offered upon the same subject. The question is, not whether the evidence was sufficient to prove the fact in the opinion of the court, but whether it was evidence proper for the jury to consider, and upon which they might be authorized to find the fact; and when evidence is offered, competent as tending to prove a particular fact, the court cannot say that the evidence is insufficient to prove the fact, unless it is all offered and tendered for the purpose of raising before the ultimate tribunal the question of its sufficiency. That was not done in this case.

There are cases in which the finding of a jury upon one question may render immaterial the reception or rejection of evidence upon some other question in the case. The more common example of this is when competent evidence is rejected or incompetent evidence is received upon the subject of damages, and the jury find a general verdict for the defendant. In such cases the whole evidence upon the question of damages becomes immaterial. There are other cases of the same kind where the finding of the jury upon one question renders wholly immaterial all evidence in relation to other questions arising in the case. The court should be very slow to say that any evidence which is competent upon a question decided against a party is immaterial, and never unless the whole evidence is presented, and the question of its sufficiency distinctly raised. In this case we think the evidence rejected was clearly competent and material, and its sufficiency should have been left with the jury.

*Exceptions sustained.*