Price, J.
The litigation in each of the cases commenced before a justice of the peace, and after judgment in that court, it was taken on appeal to the court of common pleas. In case No. 10,955, Willard McCormick was plaintiff and Jacob Rumbaugh defendant, and in No. 10,956, Charles Blair was plaintiff and Jacob Rumbaugh defendant. In this court the two cases were argued and submitted together. . In the action brought by McCormick, he sued to recover damages inflicted on a small flock of sheep, on or about the 8th of April, 1904, which damages it is alleged were caused by a dbg then owned and harbored by Rumbaugh on an adjoining farm. It is charged that the dog went upon the plaintiff’s farm and, then and there, chased, worried and injured his sheep — killed a lamb and one of his fine ewes; and that he bit and tore the flesh of others of said flock, which made •them wild and timid, to plaintiff’s damage in all $20. The answer to the petition containing this claim is a general denial. ' The jury found for the plaintiff in the sum of $20, and judgment was rendered for that amount which judgment was affirmed by the circuit court. In the petition filed by Charles Blair against Jacob Rumbaugh, it is alleged that in the fall of 1903 and ensuing winter, the dog of Rumbaugh, which he *213 owned and harbored on a farm adjoining that of plaintiff, chased and worried plaintiff’s sheep, bit and tore their flesh and so injured four of the wethers of said flock that they died and that the entire damage done to the flock amounted to $75. By answer Rumbaugh denied each and all the allegations of the petition. The jury assessed the damages at $54 for which judgment was rendered. This judgment was affirmed by the circuit court. Rumbaugh prosecutes error in this court to reverse the judgments of the lower court, and the points of error presented to us in brief and oral argument are: (1) that the court of common pleas had no jurisdiction in either of the cases; (2) the trial court admitted incompetent testimony in .each case as to the propensity of the dog to attack sheep.
It is not averred in the petition that the case reached the court of common pleas on appeal from the judgment of the justice, nor is there any reference made in the petition to any prior proceedings before that inferior tribunal. For this reason, it is asserted for plaintiff in error, it appears on the face of each petition that the court of common pleas had no original jurisdiction over the small claim made in each suit.
This question of jurisdiction was not raised in either of the lower courts, and it seems to be the proverbial “last straw” to save the plaintiff in error from payment of the judgments against him. Where a case tried before a justice goes on appeal to the ■ court of common pleas, there is no rule of practice requiring the plaintiff to aver the fact of such appeal in his petition. The certified transcript of the docket of the justice, filed in 'due time, furnishes *214 the bridge from one court to the other, and it should show how arid why the court of common pleas acquired jurisdiction — namely, by appeal. The office of the petition is to state the cause of action rather than the birthplace of the suit. If any one is yet disposed to doubt the above conclusion, such doubt may be removed by reference to additional printed record fded here in each case, which shows what knowledge defendant and his counsel had as to the manner in which the cases reached the court of common- pleas. This additional record shows the giving of an appeal bond in each case, which was approved — the date of its filing in the court of common pleas — the date of the filing of the transcript and original papers. It also contains a motion made by plaintiff in error in the latter court, wherein it is recited that “this case comes into this court upon appeal from the docket of J. A. Zeiter, a justice of the peace,” et cet. The motion proceeds to claim that the cause of action set up in the petition varies substantially from the claim made and tried before the magistrate, and the court was asked to strike the petition from the files on account of the variance or departure.
When we look to this additional record and find that counsel for plaintiff in error was surety on the undertaking for the appeal in each case, and that he attempted to convince the court that the petition departed from the bills of particular filed with the justice, the question of jurisdiction so lately made vanishes in the thinnest of' air. We should, not be expected to either seriously or complacently discuss such an empty contention.
*215 2. Did the court 'err in the admission of testimony? Counsel for plaintiff in error, in one of the briefs, designates the evidence admitted as evidence of the reputation of the dog charged with killing and injuring sheep. Such designation is not entirely fair as we read the record. A most diligent search of the record in the McCormick case fails to disclose any evidence admitted as to the character or reputation of the dog — none as to his habit of attacking sheep. ' The brief does not point out any evidence of either kind which went to the jury.
In the Blair case the following questions and answers appear on page 28 of the record: “What do you know about that dog as to having a habit of running and killing sheep?” An objection to the question was sustained. Later, on page 33, the following was propounded to the same witness: “Do you know whether or not this dog is in the habit of attacking sheep?” Objection was overruled and witness answered: “Yes, sir.” Again, he was asked: “Do you know whether or not in the fall of 1903 and spring of 1904 this dog was in the habit of attacking sheep?” Answer: “Yes, sir, he was.” But the witness was not permitted to tell what or whose sheep had been attacked.
In each case evidence was given that this dog had been driven away from plaintiff’s sheep on several occasions prior to the time of the particular injuries sued for. The above covers all we can find in the Blair case as to prior assaults, and as to the habits of the dog. No evidence of reputation was offered and none given. Hence the wasted time spent in the brief, discussing the question of dog reputation.
*216 It is well to state a fact or two before considering the legal question said to be involved. Defendant Rumbaugh urged in each case an alibi for the canine; that he was at home either tied up, or under close surveillance of the family. Again, defendant gave some evidence tending to prove that McCormick owned a dog bearing a strong resemblance to the other, and that witnesses might be mistaken about the animal which perpetrated the mischief — a case of mistaken identity. Intimate acquaintance with the accused animal could be properly shown — such as seeing him frequently about defendant’s premises, at his house and in his company and under his -control. And if the plaintiff’s familiarity was partly made up of having seen the dog at his sheep on former occasions, when he was driven away to prevent injury, that would aid in the matter of identification, and for that reason evidence of such former assaults was competent. In both cases there is direct and positive evidence of the several forays made by the dog including those in which the damages were inflicted. No better means of qualification as to the identity of the guilty animal can be suggested than frequently seeing him upon the sheep of the two plaintiffs from which it was necessary to drive him away. He was a close neighbor’s dog and the ■means of ■ establishing his identity were entirely legitimate. It was the same dog still after the same sheep, in both cases. Whether the knowledge of these former raids was the foundation for the answer made to the foregoing questions as to the habits of the dog, we are not able to say, but we think the answers were competent evidence, when considered in their relation to the other testimony. *217 It tended to prove that this particular canine was viciously disposed towards the neighbor’s sheep, and had a propensity to chase, worry and kill them. Such a disposition in an animal moved by instinct and not by reason, may be shown in corroboration of direct testimony where there is conflict as to his identity. We have examined such authorities as can be found on this subject, and are satisfied they justify the preceding questions. Some of these authorities are text-books, among which is Wig-more on Evidence. In Section 201, Volume 1, and the appended notes, we find the view taken by that author, and several illustrations of the application of the rule are given as well as a reference to the decided cases. In Section 68 of the same volume, the author says, “The character or disposition of an animal is no less relevant than that of a human being, as indicating his probable conduct on a particular occasion, and it is open to none of the objections of auxiliary policy which affect the use of a party’s character. It is therefore commonly conceded to be admissible. The hesitation sometimes observed in the rulings has been due to the time at which the disposition is predicated in the offer; but here, as with human character, the existence of a trait at a given time is evidence that it existed also for a reasonable time before and after-wards, and within liberal limits should therefore be received.” See also foot notes on same page. In Maggi v. Cutts, 123 Mass., 535, it is held “that in an action for personal injuries, caused by an obstruction in the highway, where the evidence is conflicting as to the cause of the accident and the character of the horse which plaintiff was driving at the time of the accident, evidence of the char *218 acter and habits of the horse, as well after as before the accident, is admissible.” In Broderick v. Higginson, 169 Mass., 482, it is held that “it is competent to prove that a dog has a habit of attacking passing teams, in support of a disputed allegation that he attacked a passing team on a particular occasion.”
Without quoting from other authorities, we have concluded that no error was committed in admit-, ting evidence of habit of the animal, and his vicious propensity towards sheep at and preceding the time when the injuries complained of were inflicted.
Finally, we observe that this sheep loving dog has had “his day in court” — yea, in four courts' — • although uniformly condemned.
We will let the judgment stand.

Judgments affirmed.

Summers, Spear and Shauck, JJ., concur.