## ENEAS McFAUL, PLAINTIFF IN ERROR, *v.* JAMES C. RAMSEY.

Where the only bills of exception were to the refusal of the court to grant a continuance and change the venue, the judgment of the court below must be affirmed, as these matters are not the subjects of review by this court.

The laws of Iowa permitting a demurrer only when the petition by a fair and natural construction does not show a substantial cause of action, a demurrer to part of the petition in this case was properly overruled.

THIS case was brought up, by writ of error, from the District Court of the United States for the district of Iowa.

The case is stated in the opinion of the court.

It was argued by *Mr. Reverdy Johnson* and *Mr. Reverdy Johnson, jun.,* for the plaintiff in error, and by *Mr. Norris* for the defendant.

Mr. Justice GRIER delivered the opinion of the court.

Ramsey, the plaintiff below, instituted this suit in the Dis-

trict Court of the United States for the district of Iowa. The parties have been permitted by that court to frame their pleadings, not according to the simple and established forms of action in courts of common law, but according to a system of pleadings and practice enacted by that State to regulate proceedings in its own courts. This code commences by abolishing "all technical forms of actions," prescribing the following curt rules for all cases, whether of law or equity:

"Any pleading which possesses the following requisites shall be deemed sufficient:

"1st. When to the common understanding it conveys a reasonable certainty of meaning.

"2d. When, by a fair and natural construction, it shows a substantial cause of action or defence.

"If defective in the first of the above particulars, the court, on motion, will direct a more specific statement; if in the latter, it is ground of demurrer."

If the right of deciding absolutely and finally all matters in controversy between suitors were committed to a single tribunal, it might be left to collect the nature of the wrong complained of, and the remedy sought, from the allegations of the party *ore tenus*, or in any other manner it might choose to adopt. But the common law, which wisely commits the decision of questions of law to a court supposed to be learned in the law, and the decision of the facts to a jury, necessarily requires that the controversy, before it is submitted to the tribunal having jurisdiction of it, should be reduced to one or more integral propositions of law or fact; hence it is necessary that the parties should frame the allegations which they respectively make in support of their demand or defence into certain writings called pleadings. These should clearly, distinctly, and succinctly, state the nature of the wrong complained of, the remedy sought, and the defence set up. The end proposed is to bring the matter of litigation to one or more points, simple and unambiguous. At one time, the excessive accuracy required, the subtlety of distinctions introduced by astute logicians, the introduction of cumbrous forms, fictions, and contrivances, which seemed only to perplex the investigation of truth, had brought the system of special pleading into deserved disrepute, notwithstanding the assertion of Sir William Jones, that "it was the best logic in the world, except mathematics." This system is said to have come to its perfection in the reign of Edward III. But in more modern times it has been so modified by the courts, and trimmed of its excrescences, the pleadings in every form of common-law action have been so completely reduced to simple, clear, and unambiguous forms, that the

merits of a cause are now never submerged under folios of special demurrers, alleging errors in pleading, which, when discovered, are immediately permitted to be amended. This system, matured by the wisdom of ages, founded on principles of truth and sound reason, has been ruthlessly abolished in many of our States, who have rashly substituted in its place the suggestions of sciolists, who invent new codes and systems of pleading to order. But this attempt to abolish all species, and establish a single genus, is found to be beyond the power of legislative omnipotence. They cannot compel the human mind not to distinguish between things that differ. The distinction between the different forms of actions for different wrongs, requiring different remedies, lies in the nature of things; it is absolutely inseparable from the correct administration of justice in common-law courts.

The result of these experiments, so far as they have come to our knowledge, has been to destroy the certainty and simplicity of all pleadings, and introduce on the record an endless wrangle in writing, perplexing to the court, delaying and impeding the administration of justice. In the case of Randon *v.* Toby, (11 Howard, 517,) we had occasion to notice the operation and result of a code similar to that of Iowa. In a simple action on a promissory note, the pleadings of which, according to common-law forms, would not have occupied a page, they were extended to over twenty pages, requiring two years of wrangle, with exceptions and special demurrers, before an issue could be formed between the parties. In order to arrive at the justice of the case, this court was compelled to disregard the chaos of pleadings, and eliminate the merits of the case from a confussed mass of *fifty* special demurrers or exceptions, and decide the cause without regard to these contrivances to delay and impede a decision of the real controversy between the parties. In the case of Bennet *v.* Butterworth, (11 Howard, 667,) originating under the same code, the court were unable to discover from the pleading the nature of action or of the remedy sought. It might, with equal probability, be called an action of debt, or detinue, or replevin, or trover, or trespass, or a bill in chancery. The jury and the court below seem to have labored under the same perplexity, as the verdict was for $1,200, and the judgment for four negroes. In both these cases this court have endeavored to impress the minds of the judges of the District and Circuit Courts of the United States with the impropriety of permitting these experimental codes of pleading and practice to be inflicted upon them. In the last-mentioned case, the Chief Justice, in delivering the opinion of the court, says: "The Constitution of the United States has recognised the dis-

tinction between law and equity, and it *must* be observed in the Federal courts." In Louisiana, where the civil law prevails, we have necessarily to adopt the forms of action inseparable from the system. But in those States where the courts of the United States administer the common law, they *cannot* adopt these novel inventions, which propose to amalgamate law and equity by enacting a hybrid system of pleadings unsuited to the administration of either.

We have made these few introductory remarks before proceeding to notice the merits of the controversy, as developed by the record, in order that the bar and courts of the United States may make their records conform to these views, and not call upon us to construe new codes and hear special demurrers or pleadings, which are not required to conform to any system founded on reason and experience. To test such pleadings by the logical reasoning of the common law, after requiring the party to disregard all forms of action known to the law under which he seeks a remedy, would be unwarrantable and unjust.

The plaintiff's petition sets forth his grievances in plain, intelligible form, if not with technical brevity and simplicity.

1st. He alleges a contract with defendant to deliver to him eight hundred hogs, on or before a certain day; in consideration whereof, the defendant agreed to pay plaintiff $5.50 per hundred pounds net. He avers that he did deliver according to contract, at the time and place, the number of eight hundred hogs; that defendant refused to receive over five hundred and fifty of them, or pay for the remainder.

2d. He complains that defendant refused to receive and butcher the hogs in accordance with the agreement, and, thus caused by his delay, that the plaintiff was put to expense in feeding the hogs, and exposed to a great loss in the *net weight.*

3d. That defendant did not make a true return of the net weight, but defrauded plaintiff on that behalf.

4th. That he slaughtered twenty-four more hogs than he accounted for, and improperly cut off parts of others to reduce their weight.

5th. The plaintiff alleges, in what might be called a second count, another contract to deliver fourteen hundred hogs to defendant, at $5.60 per hundred net.

He avers delivery according to contract, and charges defendant with delay in slaughtering them; causing great loss in the weight, and expense to plaintiff in feeding them in the mean while.

6th. He charges defendant with taking one hundred other hogs of plaintiff, for which he refused to account.

7th. That in consequence of delay in receiving, many of the hogs died, to the great loss of plaintiff.

8th. That defendant returned false weights of these fourteen hundred, and cut off parts before weighing.

9th. The plaintiff also sets up a third contract for five hundred hogs, which were delivered, and avers the same delay and consequent injury to plaintiff; and the same frauds in weighing, &c.

To this catalogue of grievances the defendant, in his answer, pleads thirty-three distinct denials of the averments in the petition. A jury was called to try these thirty-three issues, and found a verdict for plaintiff, and assessed his damages.

No exception was taken on the trial to the admission or rejection of evidence; no error is alleged in the charge of the court; and a regular judgment was entered on the verdict.

The only bills of exception were to the refusal of the court to grant a continuance and change the venue; both of which were matters of discretion in the court below, and not the subject of review here.

The cavils to the sufficiency of the plaintiff's statement, under the name of a special demurrer, were overruled by the court below, and justly, because the code permits a demurrer only when the petition "by a fair and natural construction does not show a substantial cause of action." As we have already shown, it contains a dozen.

The judgment of the court below is affirmed, with costs.