## KENNON v. GILMER.

## GILMER v. KENNON.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF MONTANA.

Nos. 178, 203.   Argued January 30, 31, 1889.—Decided May 13, 1889.

The denial of a change of venue, moved for on the affidavit of the party's agent to the state of public opinion in the county in which the action is brought, is not reviewable by this court on error to the Supreme Court of a Territory, even if a subject of appeal to that court from the trial court under the territorial statutes.

In an action against the proprietors of a stage coach, for an injury caused to a passenger by the misbehavior of one of the horses, evidence of subsequent similar misbehavior of the horse is admissible, in connection with evidence of his misbehavior at and before the time of the accident, as tending to prove a vicious disposition and fixed habit.

In assessing damages for a personal injury caused by negligence, the jury may rightly be instructed to take into consideration the plaintiff's bodily and mental pain and suffering, taken together, and necessarily resulting from the original injury.

In an action at law for a personal injury, in which damages have been assessed by a jury at an entire sum, the court is not authorized, upon a motion for a new trial for excessive damages and for insufficiency of the evidence to justify the verdict, to enter an absolute judgment, according to its own estimate of the damages which the plaintiff ought to have recovered, for a less sum than assessed by the jury; and either party is entitled to a reversal of such a judgment by writ of error.

THE case is stated in the opinion.

*Mr. Martin F. Morris* for Kennon.

*Mr. J. Hubley Ashton* (with whom was *Mr. Nathaniel Wilson* on the brief) for Gilmer.

MR. JUSTICE GRAY delivered the opinion of the court.

This action was brought April 4, 1882, in a district court of the county of Deer Lodge and Territory of Montana, against Gilmer and others, common carriers of passengers for hire by stage coaches between the towns of Deer Lodge and Helena,

by Kennon, a passenger in one of those coaches, to recover damages for personal injuries sustained by him on June 30, 1879.

The complaint alleged that the defendants were guilty of negligence in failing to provide a safe and competent driver and safe and well broken horses, by reason of which, and of the negligence and mismanagement of their servants, the horses became unmanageable, broke the pole of the coach and took fright, so that it was apparently unsafe for the plaintiff to remain in the coach, and he jumped to the ground and in so doing broke his leg, and it became necessary to amputate it, whereby he sustained damages in the sum of $25,000, and was obliged to pay $750 for necessary medical and surgical expenses. The answer denied these allegations.

Before a jury had been called, the defendants moved for a change of venue, on the ground that an impartial trial could not be had in the county of Deer Lodge; and in support of the motion filed an affidavit of one Riddle, deposing " that he is agent of defendants in the above entitled cause; that he resides in the county of Deer Lodge, where said action is depending ; that he is acquainted with and knows the general sentiments and opinions of the public in reference to said action and the parties thereto, and from his knowledge of such public opinion has reason to believe and does believe that the defendants cannot have a fair and impartial trial of said cause in the county of Deer Lodge; that the general sentiment of the public in said county is prejudicial to the defendants, as far as concerns said action; that one trial has already been had of said cause in this county, in which heavy damages were awarded to the plaintiff by the jury which tried said cause ; that said verdict and the judgment rendered thereon have been generally canvassed and commented upon by the public in a manner favorable to the plaintiff and unfavorable to the defendants, and thereby has [been] produced a general prejudice against the defendants which cannot fail to have an influence on the second trial of said cause."

The court withheld its decision on the motion until a jury had been called and examined on their *voir dire*, and then denied it, and the defendants excepted to the denial.

At the trial, the defendant took exceptions to evidence introduced by the plaintiff, and to instructions given to the jury at his request. The jury returned a verdict for the plaintiff, assessing his damages at "the sum of $20,000 for general damages, and also the sum of $750 for medical expenses and surgical operations."

The defendants moved for a new trial, for excessive damages appearing to have been given under the influence of passion or prejudice, for insufficiency of the evidence to justify the verdict, and for errors of law in the rulings excepted to. The motion was denied, and judgment entered on the verdict; and the defendants appealed to the Supreme Court of the Territory; which ordered the judgment to be reduced to the sum of $10,750, and affirmed it for this amount. Its opinion is reported in 5 Montana, 257.

Writs of error were sued out by both parties, by the defendants on January 1, 1885, and by the plaintiff on May 1, 1885, both returnable at October term, 1885; and the plaintiff's writ of error was docketed first in this court.

The questions arising out of the exceptions taken by the defendants to the rulings of the inferior court present no difficulty.

By the statutes of the Territory, "the court may, on good cause shown, change the place of trial, when there is reason to believe that an impartial trial cannot be had therein;" and an appeal lies to the Supreme Court of the Territory from an order granting or refusing a new trial, or from an order granting or refusing to grant a change of venue. Montana Code of Civil Procedure of 1879, §§ 62, 408; Act of Amendment of February 23, 1881, § 7.

But the statutes of the Territory cannot enlarge the appellate jurisdiction of this court. The granting or denial of a change of venue, like the granting or refusal of a new trial, is a matter within the discretion of the court, not ordinarily reviewable by this court on writ of error. *McFaul* v. *Ramsey*, 20 How. 523; *Kerr* v. *Clampitt*, 95 U. S. 188; *Railway Co.* v. *Heck*, 102 U. S. 120. And the refusal to grant a change of venue on the mere affidavit of the defendants' agent to the

state of public opinion in the county clearly involves matter of fact and discretion, and is not a ruling upon a mere question of law.

The only objection to the admission of evidence, relied on in argument, is that the plaintiff, who introduced evidence tending to support the allegations of his complaint, as well as evidence that one of the leading horses in the defendants' coach had been fractious and vicious on former occasions, was permitted to introduce evidence that in March, 1881, twenty months after the accident, this horse, when being driven in a buggy, kicked and broke the pole and tried to run away.

But evidence of subsequent misbehavior of the horse might properly be admitted, in connection with evidence of his misbehavior at and before the time of the accident, as tending to prove a vicious disposition and fixed habit, and to support the plaintiff's allegation that the horse was not safe and well broken. The length of time afterwards to which such evidence may extend is largely within the discretion of the judge presiding at the trial.

As observed by Chief Justice Bigelow, delivering the judgment of the Supreme Judicial Court of Massachusetts, overruling exceptions to the admission of evidence of the conduct of a horse as long after the accident as in the case at bar: "The objection to the evidence relating to the habits of the horse subsequent to the time of the accident goes to its weight rather than its competency. The habit of an animal is in its nature a continuous fact, to be shown by proof of successive acts of a similar kind. Evidence having been first offered to show that the horse had been restive and unmanageable previous to the occasion in question, testimony that he subsequently manifested a similar disposition was competent to prove that his previous conduct was not accidental or unusual, but frequent, and the result of a fixed habit at the time of the accident." *Todd* v. *Rowley*, 8 Allen, 51, 58. To the same effect are *Maggi* v. *Cutts*, 123 Mass. 535, and *Chamberlain* v. *Enfield*, 43 N. H. 356.

The defendants' exceptions to the instructions on the question of their liability to the plaintiff are based upon some

expressions in the fifth and sixth instructions given at the plaintiff's request, considered separately, and disregarding subsequent and perfectly definite instructions, which put it beyond doubt that the jury could not have been misled. The qualification supposed to be omitted in the sixth instruction is distinctly stated in the seventh, and the supposed implication in the fifth instruction is absolutely refuted by the twelfth instruction given at the request of the defendants themselves. It would therefore be a waste of time and space to state or to comment upon those instructions at greater length.

The remaining exception taken at the trial is to the instruction on the measure of damages, by which the jury were directed that they should assess the general damages claimed " in such sum as will compensate the plaintiff for the injury received, and in so doing may take into consideration his bodily and mental pain and suffering, both taken together, but not his mental pain alone, the inconvenience to him of being deprived of his leg, and loss of time and inconvenience in attending to his business generally, from the time of the injury to the present time, such as the plaintiff may have proved, and the jury are satisfied, to a reasonable certainty, inevitably and necessarily resulted from the original injury."

The defendants object to this instruction, that the jury were permitted to assess damages for mental suffering. But the instruction given only authorized them, in assessing damages for the injury caused by the defendants to the plaintiff, to take into consideration " his bodily and mental pain and suffering, both taken together," (" but not his mental pain alone,") and such as " inevitably and necessarily resulted from the original injury." The action is for an injury to the person of an intelligent being ; and when the injury, whether caused by wilfulness or by negligence, produces mental as well as bodily anguish and suffering, independently of any extraneous consideration or cause, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded. The instruction was in accord with the opinions of this court in similar cases.

In *Railroad Co.* v. *Barron,* decided at December term,

1866, Mr. Justice Nelson, delivering judgment, in giving the reasons why the damages in an action brought against a railroad corporation by a person injured by its negligence must depend very much on the good sense and sound judgment of the jury upon all the facts and circumstances of the particular case, said: " There can be no fixed measure of compensation for the pain and anguish of body and mind, nor for the loss of time and care in business, or the permanent injury to health and body." 5 Wall. 90, 105.

The case of *McIntyre* v. *Giblin*, decided at October term, 1879, is directly in point. That was an action to recover damages for the careless and negligent shooting and wounding of Giblin by McIntyre, and the jury were instructed that in computing damages they might take into consideration " a fair compensation for the physical and mental suffering caused by the injury." It was argued in behalf of McIntyre that the action being for a negligent injury, and not for a wilful and malicious one, the instruction was erroneous, because the words " and mental " were included. But the Supreme Court of the Territory of Utah held otherwise. 2 Utah, 384. And this court affirmed its judgment, Chief Justice Waite saying: " We think, with the court below, that the effect of this instruction was no more than to allow the jury to give compensation for the personal suffering of the plaintiff caused by the injury, and that in this there was no error." *Post*, Appendix, clxiv; *S. C.* 25 L. C. P. Co. ed. 572.

The most serious question arises upon the judgment of the Supreme Court of Montana, reducing the judgment of the inferior court from $20,750 to $10,750, and affirming it for this amount. Both parties contend that this judgment was erroneous and should be reversed, but they are not agreed as to the result of a reversal. The plaintiff contends that it must be to affirm the judgment of the inferior court, in accordance with the verdict, for the larger sum, while the defendants contend that a new trial of the whole case must be ordered.

The judgment of the Supreme Court of the Territory, reducing the amount of the verdict and the judgment of the inferior court thereon, without submitting the case to another

jury, or putting the plaintiff to the election of remitting part of the verdict before rendering judgment for the rest, was irregular, and, so far as we are informed, unprecedented; and the grounds assigned for that judgment in the opinion sent up with the record, as required by the rules of this court, are far from satisfactory.

Those grounds were, in substance, that the court, applying the rule that the verdict of a jury will not be disturbed if there is evidence to support it, unless it seems to have been the result of passion or prejudice, was satisfied that the clear weight of the testimony strongly favored the defendants' position that there was no negligence on their part and the plaintiff's injury was the result of unavoidable accident, and that "this large verdict comes from something outside of the testimony;" as well as that "if the case had been between two strangers unknown to the jury and tried on this evidence, if there had been a verdict at all for the plaintiff, it would have been for a very much less sum," and "the evidence does not support this verdict;"—the legitimate inference from all which would seem to be that the whole verdict was tainted by passion or prejudice—yet the court, because it could not "say that there is no evidence to support a verdict for such an amount as the plaintiff ought to recover," forthwith proceeded to adjudge that the verdict and the judgment thereon be reduced to what in its opinion was such an amount, without apparently considering the question of its power to do this. 5 Montana, 273, 274.

The Seventh Article of Amendment of the Constitution declares that, "in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved; and no fact tried by a jury shall be otherwise reëxamined in any court of the United States than according to the rules of the common law." This article of the Constitution is in full force in Montana, as in all other organized territories of the United States. Act of May 26, 1864, c. 95, § 13, 13 Stat. 91; Rev. Stat. § 1891; *Webster* v. *Reid*, 11 How. 437. In accordance therewith, the Code of Civil Procedure of Montana provides that "an issue of fact

must be tried by a jury, unless a jury trial is waived, or a reference is ordered by consent of the parties." § 241,

That code authorizes the court in which a trial is had, or the Supreme Court of the Territory on appeal, to set aside a verdict and grant a new trial "for excessive damages appearing to have been given under the influence of passion or prejudice," or "for insufficiency of the evidence to justify the verdict." §§ 285, 408; Act of Amendment of 1881, § 7. And by § 428 of that code, "upon an appeal from a judgment or order, the appellate court may reverse, affirm or modify the judgment or order appealed from, in the respect mentioned in the notice of appeal, and as to any or all of the parties;" "and may, if necessary or proper, order a new trial." But this section does not authorize the appellate court to render a judgment which the lower court could not have rendered.

Under these statutes, as at common law, the court, upon the hearing of a motion for a new trial, may, in the exercise of its judicial discretion, either absolutely deny the motion, or grant a new trial generally, or it may order that a new trial be had unless the plaintiff elects to remit a certain part of the verdict, and that, if he does so remit, judgment be entered for the rest. *Hopkins* v. *Orr*, 124 U. S. 510; *Arkansas Cattle Co.* v. *Mann*, 130 U. S. 69. And if the pleadings and the verdict afforded the means of distinguishing part of the plaintiff's claim from the rest, this court might affirm the judgment upon the plaintiff's now remitting that part. *Bank of Kentucky* v. *Ashley*, 2 Pet. 32.

But this court has no authority to pass upon any question of fact involved in the consideration of the motion for a new trial. And, in a case in which damages for a tort have been assessed by a jury at an entire sum, no court of law, upon a motion for a new trial for excessive damages and for insufficiency of the evidence to support the verdict, is authorized, according to its own estimate of the amount of damages which the plaintiff ought to have recovered, to enter an absolute judgment for any other sum than that assessed by the jury.

By the action of the court in entering an absolute judgment

for the lesser sum, instead of ordering that a judgment for that sum should be entered if the plaintiff elected to remit the rest of the damages, and that if he did not so remit there should be a new trial of the whole case, each party was prejudiced ; and either, therefore, is entitled to have the judgment reversed by writ of error. The plaintiff was prejudiced, because he was deprived of the election to take a new trial upon the whole case. The defendants were prejudiced, because if the judgment for the lesser sum had been conditional upon a remittitur by the plaintiff, the defendants, if the plaintiff had not remitted, would have had a new trial generally; and if the plaintiff had filed a remittitur, and thereby consented to the judgment, he could not have sued out a writ of error, and the defendants would have been protected from the possibility of being obliged in any event to pay the larger sum. Whereas upon the absolute judgment entered by the court, without any election or consent of the plaintiff, the plaintiff had the right to sue out a writ of error; and he availed himself of that right, and docketed his writ of error in this court before the defendants docketed their writ of error. The defendants were thus put in the position of being obliged to contest the plaintiff's writ of error, in order to defend themselves against being held liable for the larger sum, as the plaintiff contended that they must be upon this record.

The erroneous judgment of the Supreme Court of the Territory being reversed, the case will stand as if no such judgment had been entered; and that court will be at liberty, in disposing of the motion for a new trial according to its view of the evidence, either to deny or to grant a new trial generally, or to order judgment for a less sum than the amount of the verdict, conditional upon a remittitur by the plaintiff.

*Judgment reversed, and case remanded to the Supreme Court of Montana for further proceedings in conformity with this opinion; each party to pay one half the expense of printing the record and other costs in this court.*