CECELIA HODGE AND ROBERT J. HODGE, RESPONDENTS, v. MONTCLAIR RIDING CLUB, INC., A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT.

Argued May 4, 1943—Decided July 16, 1943.

Before BROGAN, CHIEF JUSTICE, and Justice BODINE.

For the appellant, *Edward R. McGlynn.*

For the respondents, *McCarter, English & Egner* (*Gerald McLaughlin* and *Sidney R. Pine*).

The opinion of the court was delivered by

BODINE, J. The plaintiffs in this action, husband and wife, had judgments. The case was tried in the Court of Common Pleas of Essex County before a jury. The wife's judgment was for injuries which she suffered when the horse which she was riding on the afternoon of May 20th, 1941, with a group of school children along a bridle path in the Essex County Park Reservation, reared and threw her to the ground and then fell upon her. The accident occurred when she was attempting, in a proper manner, to encourage the horse into a canter pursuant to an order of the riding master who accompanied the party. The jury could have found that some of her injuries will be permanent. The husband's judgment was for expenses incurred by him and the loss of services of his wife.

The complaint is in eight counts. Two counts are based upon the violation of a contractual duty to provide a proper and gentle horse. Two counts are based upon negligence and the alleged failure of the defendant to provide a proper and gentle horse. A count of each type charges knowledge by the defendant, its servants and agents of the vicious and dangerous character of the horse which was described as a "rearer"—"a horse that goes up on occasions on his hind legs; a horse which must either be knocked down, if the rider knows how to do it, or the rider must get out from under if the horse comes over and back."

The horse which Mrs. Hodge was riding the jury could find so acted, but apparently she neither knew how to knock it down or to slip out from under when it reared back. Mrs. Hodge was an experienced rider. A month before her injury another experienced rider suffered the same experience when riding the horse, but was able to get out from under with less serious injuries. This fact the jury could find was known to the defendant's officers.

Mrs. Hodge was a school teacher in a public school in South Orange, and as a part of her outside school activities acted as a chaperon to a group of children who were taking riding lessons at the defendant's academy. There was testimony that the defendant after the injury to Mrs. Hodge sold the horse, and that a subsequent purchaser experienced the same difficulty with the animal.

It is not seriously contended that the issues in the case were not properly for the jury.

Appellant contends, however, that the evidence as to the subsequent sale of the horse was improperly received.

Our examination of the proofs leads us to believe that the identity of the horse was well established. Of course, it was incumbent upon the plaintiffs to establish that the defendant knew of the vicious character of the horse, which it permitted Mrs. Hodge to ride, when she brought the pupils from the school to the academy. The circumstance that she did not pay a riding fee but each of the pupils did seems not to be a circumstance which would change the rule of law.

Nor does it seem that the testimony as to the subsequent

sales price of the horse was immaterial in so far as the questions which were objected to were answered and many of them were not. It seems a reasonable inference for the jury to draw from the proofs that the low price obtained for the horse was due to the circumstance that he was a rearer, and that when this discovery was made by intending purchasers they were reluctant to pay more than a nominal price for the animal.

The proof of the subsequent rearing was admissible even though the conditions existing, when the animal reared in New York after its sale, were not precisely similar to those in the Essex County Park Reservation. The occurrence showed the disposition of the animal.

Clearly, the jury could find that the owner must have known of the evil traits of the horse. Both prior and subsequent behavior of the horse was evidential to prove its vicious disposition and fixed habit and support the plaintiffs' contention that the horse was not safe and fit for riding purposes. *Kennon* v. *Gilmer*, 131 *U. S.* 22; *Wigmore on Evidence*, (*3d ed.*) §§ 68a, 201.

The court properly declined to charge that Mrs. Hodge was a gratuitous bailee. As before pointed out, the jury could find that her mount was provided because she had been instrumental in bringing a class of school children to the riding academy. Clearly, this circumstance provided the consideration for her ride, but at all events the proofs tend to show that the defendant was manifestly lacking in ordinary care in knowingly furnishing a rearing horse for riding purposes. *Emmons* v. *Stevane*, 77 *N. J. L.* 570; *Hahn* v. *Rockingham Riding Stables*, 126 *Id.* 324; 3 *C. J. S.* 1098, § 13; 38 *C. J.* 92, 96.

And even if there was no bailment the defendant's liability could be predicated upon the basis of its responsibility for injuries resulting from the known vicious acts of its animal. *Barnett* v. *Pulda*, 116 *N. J. L.* 141; *Kahn* v. *Aggelakos*, 10 *N. J. Mis. R.* 194; *Emmons* v. *Stevane, supra.* Other decisions and authorities which show the application of these principles are *Restatement of Torts*, § 509; *Smith* v. *Donohue*, 49 *N. J. L.* 548.

It is claimed that the court failed to charge the doctrine of assumption of risk, but this is not so. The charge upon this point was clear and precise.

All the grounds of appeal that were argued have been examined, as well as those not argued, although we were not obliged to do so, and we can only conclude that the appeal is without merit and that the judgments must be affirmed, with costs.