Alf REINERTSEN, Plaintiff-Appellant,

v.

**GEORGE W. ROGERS CONSTRUCTION CORPORATION,**
Defendant-Appellee.

No. 564, Docket 72–2155.

United States Court of Appeals,
Second Circuit.

Argued April 10, 1975.

Decided July 3, 1975.

Paul C. Matthews, New York City, for plaintiff-appellant.

Joseph Arthur Cohen, New York City (Alexander, Ash, Schwartz & Cohen; Sidney A. Schwartz, Irwin H. Haut, New York City, on the brief), for defendant-appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.[*]

FEINBERG, Circuit Judge:

Plaintiff Alf Reinertsen's[1] left thumb was crushed by a pile driver in January 1967, while he was working as a dock builder for defendant George W. Rogers Construction Corporation. Reinertsen, who was 50 years old when the accident occurred, was hospitalized for about 16 days and lost four months of work. Attempts to save the thumb failed, and most of it was amputated. Reinertsen returned to work for defendant, continuing for about three years. He allegedly left his job because his thumb was highly sensitive to the cold and damp conditions in which he had to work, but found other employment as a marine construction worker. Reinertsen's earnings remained virtually the same in all the years after the accident, except for a slight drop in the year he left defendant's employ.

Plaintiff brought an action in the United States District Court for the Southern District of New York, claiming that defendant was negligent in various respects and had furnished an unseaworthy vessel. After a jury trial before then District Judge Walter R. Mansfield, plaintiff obtained a verdict of $75,000. Finding the award "grossly excessive," Judge Mansfield granted defendant's motion for a new trial on damages alone unless plaintiff remitted $30,000 of the verdict and consented to a judgment of $45,000. When the required agreement by plaintiff was not forthcoming, the judge ordered a new trial on damages alone. This trial before Judge Marvin E. Frankel resulted in a verdict of $16,000. Plaintiff moved for a new trial on the ground that this verdict was inadequate, but the motion was denied. This appeal followed, in which plaintiff challenges both the order of Judge Mansfield granting a new trial after the first verdict and the order of Judge Frankel refusing to do so after the second, which we discuss in Part I of this opinion. Plaintiff also seeks to raise an important question of appellate jurisdiction, which we discuss in Part II.

I.

Treating the case in the procedural manner traditional in this circuit, we find little difficulty in affirming the judgment. While plaintiff is entitled to have us review Judge Mansfield's order granting a new trial unless plaintiff filed a remittitur of $30,000, *Taylor* v. *Washington Terminal Co.*, 133 U.S.App.D.C. 110, 409 F.2d 145, 147, *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85 (1969), we find no sufficient basis for upsetting the judge's ruling that "under all the circumstances," the $75,000 verdict was clearly excessive and . . . a verdict of $45,000 would represent a figure at the upper limits of reason." It is true that, for reasons pointed out in *Taylor* v. *Washington Terminal Co., supra,* 409 F.2d at 147–49, less appellate deference need be accorded to a ruling of the trial judge which is opposed to the verdict than to a ruling which is in support of it, as in *Dagnello* v. *Long Island R.R.,* 289 F.2d 797, 806 (2d Cir. 1961), and *Grunenthal* v. *Long Island R.R.,* 393 U.S. 156, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968). See C. Wright, Federal Courts 422 (2d ed.1970). But the *Taylor* opinion acknowledged that "The trial judge's view that a verdict is outside the proper range deserves considerable deference" and concluded that an appellate court should "reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was *clearly* within the 'the maximum limit of a reasonable range.'" 409 F.2d at 149 (emphasis in original). See also *Cosentino* v. *Royal Netherlands S.S. Co.,* 389 F.2d 726 (2d Cir.), *cert. denied,* 393

---

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

1. We were informed by letter from counsel for plaintiff shortly before argument that although Reinertsen has died, formal substitution of parties has not yet been made.

U.S. 977, 89 S.Ct. 441, 21 L.Ed.2d 438 (1968). Here, in contrast to *Taylor,* the trial judge did not abuse his discretion in concluding that, in view of the absence of significant economic loss, a $75,000 verdict was clearly beyond the maximum limit of a reasonable range and that $45,000 would constitute such a maximum.

■ Even more plainly, under *Dagnello* and *Grunenthal,* we cannot properly interfere with Judge Frankel's refusal to set aside the $16,000 verdict at the second trial as inadequate. He found that verdict was "in the range of the jury's allowable discretion on this record," although he noted it was "possibly smaller than I would have returned." We agree that this was hardly a generous verdict. But, bearing in mind the restraint with which a trial judge must treat a verdict, and, in turn, the deference which we owe to a ruling supporting one, we again find no abuse of discretion. This verdict was not grossly and palpably inadequate. See *Caskey* v. *Village of Wayland,* 375 F.2d 1004, 1007 (2d Cir. 1967).

## II.

This, however, is not the end of the matter. After Judge Mansfield set aside the $75,000 verdict as too high and ordered a new trial unless plaintiff remitted $30,000, plaintiff, in a memorandum in support of a motion for reargument, indicated that if the judge should adhere to his decision, plaintiff would be willing "to waive . . . his right to a new trial and to submit, under protest, to the reduced judgment with a view to eliminating the necessity for a new trial and appealing directly from the reduced judgment." Judge Mansfield entered an order denying reargument; he adhered to his "decision to the effect that the jury's award was grossly excessive and that defendant's motion for a new trial is granted unless the plaintiff *agrees* to remit $30,000 of the $75,000 awarded" (emphasis in original) but did not discuss

plaintiff's alternative suggestion. Plaintiff apparently then submitted a paper to the district court stating that he "hereby waives his right to a new trial so that judgment may be entered in favor of the plaintiff in the amount of $45,000.00 without, however, waiving his right to appeal from said judgment." In a petition filed with this court shortly thereafter, plaintiff alleged that the district court had "refused to enter judgment in the form professed [sic] by the plaintiff" and sought "a writ of mandamus directing the Honorable Court to enter the $45,000 award in such form that plaintiff can appeal from such judgment." The petition was denied. *Reinertsen* v. *Mansfield,* 71–1589 (June 22, 1971). Plaintiff now claims that in light of his proffered waiver he should have been allowed to appeal on the basis that he proposed and that, even though we decline to reverse Judge Mansfield's order, he should still receive the $45,000 he was willing to accept if Judge Mansfield's direction of a remittitur withstood appellate review rather than the $16,000 awarded at the second trial.

■ Under usual federal practice, an order granting a new trial is not appealable, *Compagnie Nationale Air France* v. *Port of New York Authority,* 427 F.2d 951, 954 (2d Cir. 1970), even if the new trial results from a refusal to accept a remittitur, see 9 J. Moore, Federal Practice ¶ 203.06, at 721 n. 30 (1973). Nor has the traditional rule permitted a plaintiff who filed a remittitur to appeal the judgment; the theory has been that plaintiff consented to the reduced judgment. See 11 C. Wright & A. Miller, Federal Practice and Procedure § 2815, at 106 (1973); 9 J. Moore, supra, ¶ 203.06, at 721 n. 31; *S. Birch & Sons* v. *Martin,* 244 F.2d 556, 562, 17 Alaska 230 (9th Cir.) cert. denied, 355 U.S. 837, 78 S.Ct. 62, 2 L.Ed.2d 49 (1957). Thus, the only course generally thought to be available to a plaintiff to procure review of an order granting a new trial in the absence of a remittitur was to do what was done here, namely, to undergo the

new trial and, if the result was unsatisfactory, bring up the propriety of the remittitur on appeal from the final judgment. If the appellate court held the new trial should not have been ordered, the original verdict would be restored. If it held to the contrary, the verdict on the second trial, if otherwise unassailable, would be the basis for judgment.

However, after some wavering partially traced in 9 J. Moore, supra, ¶ 203.06 at 722, the Fifth Circuit has arrived at the position that "if the plaintiff accepts the remittitur under protest, the final judgment entered thereon would be appealable, and the order requiring remittitur could be reviewed in that appeal." *Wiggs* v. *Courshon*, 45 F.2d 1281, 1283 (5th Cir. 1973). See also, e. g., *United States* v. *1160.96 Acres of Land*, 432 F.2d 910 (5th Cir. 1970); 11 Wright & Miller, supra, § 2815, at 105–06 & n. 10.[2]

The Sixth Circuit has approved the practice in a diversity case, where state procedure allowed this, on the basis that the Erie doctrine so required. *Mooney* v. *Henderson Portion Pack Co.*, 334 F.2d 7 (6th Cir. 1964). We find this rationale questionable, as did the Seventh Circuit,

*Dorin* v. *Equitable Life Ins. Soc'y*, 382 F.2d 73, 78–79 (7th Cir. 1967). There, the court adhered to the orthodox rule previously followed in *Casko* v. *Elgin, J. & E. Ry.*, 361 F.2d 748, 751 (7th Cir. 1966), although the opinion writer, Judge Fairchild, expressed a personal preference for "a rule more liberal to the plaintiff." The Sixth Circuit, however, remains unrepentent. *Manning* v. *Altec, Inc.*, 488 F.2d 127, 130–31 (6th Cir. 1973).

The only cases touching on the problem in this circuit have arisen in the context of attempted cross-appeals by plaintiffs (who had accepted a remittitur) after defendants had appealed the judgments for usual reasons. In this situation, this court has taken apparently contradictory positions on the allowability of the cross-appeal.[3] In *Burris* v. *American Chicle Co.*, 120 F.2d 218, 223 (2d Cir. 1941), an opinion by Judge Chase expressed reservations about reviewing a plaintiff's cross-appeal from a judgment entered after remittitur, but then dismissed the cross-appeal on the merits because the trial court had not abused its discretion. However, in *Mattox* v. *News Syndicate Co.*, 176 F.2d 897, 904 (2d Cir.),

---

2. We note that there are old Supreme Court cases which appear to forbid appeals or cross-appeals by plaintiffs who have filed remittiturs. Two of these cases, in which the plaintiff appealed, may be distinguishable on their facts. In *Kennon* v. *Gilmer,* 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110 (1889), a territorial supreme court had erroneously reduced the judgment entered on the jury verdict without giving the plaintiff the option of accepting the remittitur or having a new trial. The Supreme Court held this procedure violated the seventh amendment. In *Lewis* v. *Wilson,* 151 U.S. 551, 555, 14 S.Ct. 419, 421, 38 L.Ed. 267 (1894), the plaintiff clearly did not accept the remittitur under protest, but rather "received payment and acknowledged full satisfaction." The other two cases, however, *Woodworth* v. *Chesbrough,* 244 U.S. 79, 37 S.Ct. 583, 61 L.Ed. 1005 (1917), and *Koenigsberger* v. *Richmond Silver Mining Co.,* 158 U.S. 41, 15 S.Ct. 751, 39 L.Ed. 889 (1895), clearly prohibit cross-appeals by plaintiffs who have accepted remittiturs, whether protesting or not. It is not clear from the Fifth Circuit's discussion how it distinguishes these precedents. See *United States* v. *1160.96 Acres of Land,* supra, at 911–12;

6A J. Moore, ¶ 59.05[3], at 59–63. See also *Thomas* v. *E. J. Korvette, Inc.,* 329 F.Supp. 1163, 1171 (E.D.Pa.1971), rev'd on other grounds, 476 F.2d 471 (3d Cir. 1973).

A remittitur under protest was also permitted by a district court in Pennsylvania, *Thomas* v. *E. J. Korvette, Inc.,* supra, 329 F.Supp. at 1170–71. For a survey of state practice, see Note, Civil Procedure—Remittitur—Remitting Parties' Right to Cross-Appeal, 49 N.C.L.Rev. 141 (1970).

3. Some state courts apparently allow appeals from remittiturs in cases of this sort. See Note, Remitting Parties' Right to Cross-Appeal, supra. We note that the argument for allowing plaintiff to cross-appeal may be slightly stronger than for allowing plaintiff to appeal directly from a remitted judgment. In the former situation, the case will have to be considered anyway by the appellate tribunal on defendant's appeal. On the other hand, if a plaintiff cross-appeals from a judgment he has accepted without protest, he is in a less equitable posture.

cert. denied, 338 U.S. 858, 70 S.Ct. 100, 94 L.Ed. 525 (1949), where also the plaintiff had actually accepted the reduced judgment, with two of the judges in *Burris* sitting (Swan and Clark) and Judge Learned Hand writing the opinion, appealability was rejected in a cryptic paragraph.

In *Wiggs* v. *Courshon,* supra, 485 F.2d at 1283, Judge Roney made the following explanation why allowing the plaintiff to appeal where he accepts the remittitur under protest does not offend the policy of the "final judgment" rule against piecemeal appeals:

> If the remittitur was in order, the plaintiff has agreed to it, the judgment would be final, and no new trial would be required. If the trial court erred in ordering the remittitur, the appellate court could set aside the judgment and order that a judgment be entered on the jury verdict. Again, no new trial would be necessary to conclude the litigation.

There is, of course, another possibility, namely, that the appellate court will reduce the remittitur. But the plaintiff's consent to the larger remittitur should certainly cover the smaller. Plaintiff contends that, with the policy of the final judgment rule thus satisfied, the interests of justice will be served by allowing an immediate appeal under these circumstances. If the plaintiff succeeds, the verdict will be restored in whole or in part without need for the parties to undergo a second trial. If the plaintiff fails, there will be a judgment within what the trial judge considered to be the range of reason. Defendant, however, points out that the jury, if not prejudiced, at least must have been wrongheaded, and that defendant should not be placed in a position where if the remittitur is held proper, a plaintiff who was unwilling to accept it without an appeal will always get the maximum that a jury could reasonably fix rather than what a wiser jury might in fact award.

While these seem to be the crucial considerations, a decision to depart from the traditional practice may fairly take some account of the effect of the change on the workload of the courts. Defendant contends that now almost all cases end with acceptance of remittiturs by plaintiffs, but the proposed practice of allowing plaintiffs to accept remittiturs under protest will increase the burdens on the courts of appeals. The increase will be the number of cases in which trial judges grant new trials subject to remittiturs since plaintiffs will have nothing to lose by accepting the remittitur under protest and then appealing; they will be assured of a minimum judgment, which the trial judge has already determined is the maximum legal recovery, and, if successful on appeal, they may still get all or part of the amount to be remitted as well. Plaintiff disputes this, arguing that the chances of upsetting the trial judge's ruling are poor since the only issue on appeal would be whether the trial judge abused his discretion in ordering a new trial if plaintiff refused to accept a remittitur. See *Bonura* v. *Sea Land Service, Inc.,* 505 F.2d 665, 669–70 (5th Cir. 1974). Thus, an appeal will be taken only when the trial court's action seems flagrantly wrong; this is said to be particularly true of personal injury suits, undoubtedly the largest element in the problem, because most of them are prosecuted on a contingent fee basis and it would be unprofitable for plaintiffs' lawyers to prosecute appeals with dubious chances of success. *Sed quaere.* There is also the further deterrent that plaintiffs following the contemplated procedure will be giving up a little something—the chance of a verdict on the new trial even higher than on the first, one which a judge would be unlikely to disturb. Plaintiff's argument as to lack of increase of workload gains some credence from the enthusiasm for the practice in the busiest circuit of all; the abundant statistics maintained by the Fifth Circuit should shed light upon the proportion of cases of this sort in which

appeals are taken. Plaintiff adds that if there should be an increased burden on the courts of appeals, and it seems clear there would be some, this would be more than counterbalanced by the relief afforded to the district courts from having to conduct new trials in cases like this one where a plaintiff is unwilling to accept a remittitur without appellate review. Defendant responds that any improvement would be trifling, since remittiturs are almost always accepted. A study of our own district courts should be able to develop figures on this point.

Apart from the question whether Supreme Court decisions permit us to adopt the Fifth Circuit practice, see note 2 supra, we are reluctant to depart from the traditional rule without better answers to the various questions posed above. To be sure, we could not avoid decision if the issue were squarely before us. But is is not. Even on plaintiff's theory, we see no persuasive reason why he could not have accepted the remittitur and then filed a notice of appeal, relying on the record he had already made to establish that his acceptance was "under protest." Instead, plaintiff sought the issuance of mandamus,[4] a remedy granted by this court only under exceptional circumstances. Having failed to appeal from the earlier order and having had a new trial at which he might have obtained a verdict higher than the amount to which Judge Mansfield required a remittitur, plaintiff cannot now be allowed to treat Judge Mansfield's order, augmented by plaintiff's proffered acceptance under protest and waiver of a new trial, as a final judgment. This is particularly so since the time for appealing from such a judgment had long since expired when the instant notice of appeal was filed. We thus must leave the interesting problem canvassed here to another day.

Affirmed.

---

4. The petition for mandamus did not bring to the court's attention the decisions in the Fifth Circuit or the discussion by the text writers.