Robert Fross STAPLIN,
Plaintiff-Appellant,

v.

MARITIME OVERSEAS CORP.,
Defendant-Appellee.

No. 693, Docket 74–1506.

United States Court of Appeals,
Second Circuit.

Argued May 8, 1975.

Decided July 16, 1975.

Francis J. Dooley, Orange, N. J. (Henry Isaacson, New York City, on the brief), for plaintiff-appellant.

Joseph V. Fleming, New York City (Haight, Gardner, Poor & Havens, J. Ward O'Neill, New York City, on the brief), for defendant-appellee.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

This case presents another aspect of the attempt of trial judges to control verdicts they regard as excessive and the rights of plaintiffs to appeal from such action. In one of those coincidences that makes the law so fascinating, the procedures utilized here are almost the precise reverse of those in *Reinertsen v. George W. Rogers Constr. Corp.*, 519 F.2d 531 (2d Cir. 1975), in which this court recently discussed the general problem at length. Robert Fross Staplin appeals from an order of the United States District Court for the Southern District of New York, Richard H. Levet, J., which reduced a jury verdict of $3,500 to $2,335 and directed entry of judgment in the lower amount. For reasons indicated below, we reverse the order of the district court and order judgment in the full amount awarded by the jury.

## I

Plaintiff Staplin injured his right foot while employed in March 1973 as a merchant seaman on the S/S Overseas Ulla, a vessel owned by defendant Maritime Overseas Corp. The circumstances of the accident need not concern us because in a bifurcated jury trial before Judge

Levet, defendant was apparently found liable for plaintiff's damages and does not now complain of that verdict.[1] The second part of the trial covered damages. On this issue, there was evidence before the jury that plaintiff was a chief pumpman aboard the vessel; that he was a "permanent employee" and would not have had to leave the vessel had he not been injured; that he did leave the vessel on March 22, 1973 with a Master's Certificate to be treated at the United States Public Health Service Marine Hospital, which pronounced him not fit for duty at that time; and that he was not found fit for duty until May 30, 1973.

The trial was held in March 1974, and plaintiff's claim for damages was limited to pain and suffering and lost earnings for the period he was not fit for duty. On the issue of lost earnings, plaintiff introduced into evidence exhibit P–2, showing that he had earned $2,125.78 for two months and four days of work on the voyage of the S/S Ulla during which he was injured. There was also a stipulation as to the wages earned by plaintiff in the four year period of 1969–72. These averaged about $6,200 per year.[2]

The judge originally told the jury that it should award plaintiff as compensation for lost earnings what the jury believed "plaintiff would have earned," that it "may consider the average" of the four years' earnings and that it "may also consider, for whatever aid it may be," exhibit P–2. The judge furnished the jury a form upon which it was to record its special verdict in response to questions, which are quoted hereafter. After starting deliberations, the jury sent a note which asked:

Was plaintiff paid wages while unfit for duty?

The judge responded:

The answer, of course, is no. That's what the claim is all about as far as past wages are concerned. . . .

I will explain to you that the proper way to calculate it would be to take an average—an annual amount for the previous four years and allot four months and six days,[3] I guess it is, and if you believe that's correct, and it has been proved that he was unable to work because of the accident, then you put that amount, whatever amount you come to, in the special verdict. I think I have answered it.

Is there any question now?

Do you understand, Mr. Foreman?

The Foreman: Yes.

The Court: Is there anybody that doesn't understand?

Have I correctly stated it, Mr. Dooley?

Mr. Dooley [Plaintiff's counsel]: Yes, your Honor.

The jury eventually returned a verdict, in which it answered the questions put to it as follows:

1. (a) Has plaintiff proved by a fair preponderance of the credible evidence that as a result of the accident of March 1, 1973 he sustained damages consisting of past loss of wages?

$\frac{\checkmark}{\text{Yes}} \quad \frac{}{\text{No}}$

(b) If so, to what award is plaintiff entitled for past loss of wages? $2400.00

Proceed to question 2

2. (a) Has plaintiff proved by a fair preponderance of the credible evidence that as a result of the accident of March 1, 1973 he sustained damages

---

1. We use the word "apparently" because the parties have so informed us. There was no complete transcript of either phase of the trial transmitted to us as part of the record on appeal.

2. Plaintiff's stipulated earnings were as follows: 1969—$8,732; 1970—$8,147; 1971—$1,671; 1972—$6,107.

3. The judge later made clear to the jury that he misspoke and meant to say "two months and six days."

consisting of past pain, suffering and disability? 

✓
Yes    No

(b) If so, to what award is plaintiff entitled for past pain, suffering and disability? $1200.00

Proceed to question 3

3. What is the sum of plaintiff's damages consisting of past loss of wages and past pain, suffering and disability? (Give the sum of 1(b) and 2(b)) $3600.00

The jury was then excused. Apparently believing that the jury had not followed his instructions, the judge asked defendant's counsel to compute Staplin's average annual earnings for four years and, based upon that, to arrive at a figure for the period plaintiff was unfit for duty. The judge also suggested to counsel that he move to reduce the verdict, which counsel was happy to do. The judge then reduced the figure of $2,400, given by the jury in answer to question 1(b), to $1,135 to make the total verdict $2,335. Plaintiff's counsel objected strenuously to the entire procedure, arguing, among other things, as follows:

Mr. Dooley: The objection is that we have had a jury finding which cannot be disturbed. It is a finding of fact and the fact has been transmitted into figures. Any instructions to the jury on the mathematical calculations are at best guidelines and also submitted to them with the fact what were the man's past earnings records for the previous two months. In fact, it was almost the same period now. So they could very well use that as a guide in calculating the wages that were lost by the man had he stayed aboard the vessel.

Defendant responded by arguing that plaintiff's articles terminated when he got off the vessel and there was no proof that he would have stayed on the vessel. Plaintiff's counsel rejoined that there was such evidence but the court adhered to its earlier ruling, apparently on the ground that "there wasn't any proof that it [plaintiff's employment on the vessel] would go on." Judgment was entered upon the reduced verdict in the sum of $2,335, together with costs. From that judgment plaintiff appeals.

II

Plaintiff argues that the district judge had no right to reduce the jury's award for damages and enter judgment in the lower amount. According to plaintiff, this infringed his seventh amendment right to trial by jury because there was substantial evidence to support the jury verdict for lost wages. Defendant responds that plaintiff cannot "appeal from a jury instruction to which he specifically agreed"[4] and that the trial court did not abuse its discretion.

■ There is no doubt that plaintiff has the right to appeal from the judgment in the lower amount. The judge did not use the procedure of ordering a new trial unless plaintiff agreed to remit a specified sum. Had the judge done that and had plaintiff filed a remittitur "under protest" and then appealed, we would have been faced with the question of appealability discussed at some length, but not decided, in *Reinertsen v. George W. Rogers Constr. Corp., supra.* Here, the judge simply substituted his judgment for that of the jury and, without any indication of assent by plaintiff, entered judgment in the lower amount. This was clearly a judgment from which plaintiff could appeal. Cf. *Kennon v. Gilmer*, 131 U.S. 22, 30, 9 S.Ct. 696, 33 L.Ed. 110 (1889).

■ We assume from the rest of defendant's argument that what it means is that plaintiff cannot properly complain about the judge's supplemental charge on the method the jury should use in calculating lost wages because plaintiff agreed to it. Plaintiff responds that he is not attacking the charge. He agreed, he now says, not that the jury was

bound to calculate damages based upon an average of his earnings over four years but only that the court's supplemental charge was a correct statement of defendant's position. The colloquy is ambiguous. The judge's statement of "the proper way" to calculate lost wages "if you believe that's correct" was not a clear direction to the jury that it was required to use the averaging method.[5] Obviously, plaintiff's counsel did not consider it as such. He had just urged the jury to use another method and would hardly have immediately agreed without complaint that his argument had been incorrect.[6] Indeed, in a colloquy in the robing room after the main portion of the charge had been given, this very question was discussed, and plaintiff's counsel stated he would object if the judge told the jury "the average is what really controls." The judge never gave such an instruction. Moreover, the judge's comment went far beyond the brief response called for by the jury's note.[7] Under all the circumstances, therefore, we hold that plaintiff is not barred from arguing on appeal that the verdict was improperly reduced.

■■■ What we have already said disposes of the substance of the appeal as well. Defendant correctly concedes that a general verdict could not on these facts simply have been reduced by the judge. *Kennon v. Gilmer, supra,* 131 U.S. at 29, 9 S.Ct. 696; *Brewer v. Uniroyal, Inc.,* 498 F.2d 973, 976 (6th Cir. 1974); *Stewart v. Atlantic Pipe Line Co.,* 470 F.2d 738 (5th Cir. 1972), modified,

479 F.2d 311 (1973), see also 474 F.2d 695 (1973); 6A J. Moore, Federal Practice ¶ 59.05[3], at 59–61 & n. 36 (2d ed. rev. 1974). Defendant argues, however, that the judge could follow that course here because the verdict was special and did not conform to his charge.[8] We need not examine the validity of the proposition because, as already explained, the jury did not clearly disregard the judge's charge. We recognize that a trial judge does have the power to alter a jury verdict without consent if he "is satisfied that the issue of liability has been properly determined by the jury . . . and there is no genuine factual issue as to the amount of recoverable damages. . . ." 6A J. Moore, *supra,* at 59–61 & n. 37. The judge here may have believed he was doing this. However, as plaintiff's counsel tried to point out, there was sufficient evidence to create a jury question on the amount of appellant's lost wages. Exhibit P–2 showed plaintiff's wages on the same ship he arguably would have worked on had he not been injured. Plaintiff had testified that he could continue to work on the Ulla as long as he wished, and that he left the ship only because of the injury and was given a Master's Certificate for treatment. Perhaps the judge thought the only evidence that could be considered on lost earnings was the four-year average. But, as indicated above, he did not clearly state this and did not remove exhibit P–2 from the jury's consideration. Moreover, on this record, such a ruling would have been erroneous.[9]

---

5. Moreover, at the time the judge made this statement, he did not order exhibit P–2 stricken from evidence, which he presumably would have done if it were no longer relevant to the jury's deliberations.

6. We note also that defense counsel made use of exhibit P–2 in his summation to attack plaintiff's credibility as a witness by arguing that it showed plaintiff had exaggerated his damages.

7. The supplemental charge relied upon by defendant is additionally ambiguous because it is not clear what the judge's statement "if you believe that's correct" refers to. It might refer to "the proper way" to calculate lost wages, as

suggested above, or it could refer to a finding by the jury merely of the number of days plaintiff was not fit for duty.

8. Defendant cites *Feinsinger v. Bard,* 195 F.2d 45 (7th Cir. 1952), but that case only holds that where there is a special verdict, the court will ascertain whether there was evidence to support each part of the jury award.

9. See, e. g., *Porello v. United States,* 153 F.2d 605, 608–09 (2d Cir. 1946), aff'd in part, rev'd in part sub nom. *American Stevedores, Inc. v. Porello,* 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947) (special circumstances considered in computing past lost wages).

■ The only question remaining is whether we should direct that judgment be entered for the full verdict or should remand for the judge to consider granting a new trial either with or without a remittitur in the disputed amount. On this record, we see no persuasive reason for subjecting the parties to the possibility of a new trial when the stakes are so minimal, or for prolonging a case that should have been terminated long ago.

Judgment reversed with directions to enter judgment for the full jury verdict, with interest and costs to plaintiff.